1  Michael P. Esser (SBN 268634)
   KIRKLAND & ELLIS LLP
2  555 California Street
   San Francisco, CA 94104
3  Telephone: (415) 439-1400
   Facsimile: (415) 439 1500
4  Email:  michael.esser@kirkland.com

5  Jeffrey L. Willian, P.C. (*pro hac vice*)
   Donna M. Welch, P.C. (*pro hac vice*)
6  KIRKLAND & ELLIS LLP
   300 North LaSalle
7  Chicago, IL 60654
   Telephone: (312) 862-2000
8  Facsimile: (312) 862-2200
   Email:  jwillian@kirkland.com
9  Email:  dwelch@kirkland.com

10 Attorneys for Plaintiffs

11              **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13                    **SAN JOSE DIVISION**

| | |
|---|---|
| 14  MONTEREY BAY MILITARY HOUSING, LLC, MONTEREY BAY LAND, LLC, MEADE 15 COMMUNITIES LLC, FORT BLISS/WHITE SANDS MISSILE RANGE HOUSING LP, RILEY 16 COMMUNITIES LLC, FORT LEAVENWORTH FRONTIER HERITAGE COMMUNITIES, I, LLC, 17 FORT LEAVENWORTH FRONTIER HERITAGE COMMUNITIES, II, LLC, CARLISLE/ PICATINNY 18 FAMILY HOUSING LP, BRAGG COMMUNITIES LLC, FORT DETRICK/WALTER REED ARMY 19 MEDICAL CENTER LLC, PICERNE-FORT POLK FUNDING, LLC, RUCKER COMMUNITIES LLC, 20 STEWART HUNTER HOUSING LLC, SILL HOUSING, LLC, AETC HOUSING LP, AMC WEST 21 HOUSING LP, LACKLAND FAMILY HOUSING, LLC, and VANDENBERG HOUSING LP, | Case No. 5:17-cv-04992-BLF (NC)<br><br>Judge: Honorable Beth Labson Freeman<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS ANNANDALE PLANTATION, LLC AND ANNANDALE PLANTATION, LLC's MOTION TO DISMISS**<br><br>Date: April 12, 2018<br><br>Time: 9:00 a.m.<br><br>Dept:  Courtroom 3<br><br>The Hon. Beth Labson Freeman<br><br>Complaint Filed: August 28, 2017 |
| 22              Plaintiffs, 23       vs. | |
| 24  AMBAC ASSURANCE CORPORATION, JEFFERIES MORTGAGE FINANCE, INC., 25 JEFFERIES & COMPANY, INC., JEFFERIES LLC, JEFFERIES GROUP LLC, DANNY RAY, 26 ANNANDALE PLANTATION, LLC, ANNANDALE PLANTATION, LLC,  and CHETAN MARFATIA, | |
| 27              Defendants. | |

**Table of Contents**

                                                                                    **Page**

INTRODUCTION...................................................................................................1

BACKGROUND FACTS ......................................................................................1

LEGAL STANDARD ............................................................................................3

ARGUMENT .........................................................................................................4

I.   **Personal Jurisdiction Over The Annandale Defendants Is Proper Under 18 U.S.C. § 1965(b).** ............................................................................................4

    A.   Plaintiffs Allege A Single Nationwide Conspiracy And RICO Enterprise. ..............5

    B.   The Southern District Of New York Does Not Have Jurisdiction Over The Annandale Defendants Or Ray. ..................................................................7

    C.   Plaintiffs Adequately Plead The Annandale Defendants' Role In The RICO Conspiracy. ............................................................................8

II.  **Plaintiffs Sufficiently Allege RICO Violations Against The Annandale Defendants.** ........................................................................................10

    A.   Plaintiffs Have Unquestionably Met Their Pleading Obligation Under § 1962(d). ...........................................................................10

    B.   Plaintiffs Have Sufficiently Pled the Annandale Defendants' Role in Operating the RICO Enterprise. ........................................................12

    C.   Plaintiffs Need Not Plead Two Predicate Acts Committed by the Annandale Defendants in Order to Plead a Violation of § 1962(c). ........................15

III. **Plaintiffs Sufficiently Plead The Annandale Defendants' Role In Aiding And Abetting Breaches Of Fiduciary Duty.** ...............................................17

IV.  **Plaintiffs Sufficiently Plead The Annandale Defendants' Role In The Conspiracy To Commit Fraud.** ...............................................................19

CONCLUSION ....................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*131 Main St. Assocs. v. Manko,*
    897 F. Supp. 1507 (S.D.N.Y. 1995)....................................................................13

*Abels v. Farmers Commodities Corp.,*
    259 F.3d 910 (8th Cir. 2001) ..........................................................................13

*Abrahim & Sons Enterprises v. Equilon Enterprises, LLC,*
    292 F.3d 958 (9th Cir. 2002) ..........................................................................18

*Aiu Ins. Co. v. Olmecs Med. Supply, Inc.,*
    No. CV-042934ERK, 2005 WL 3710370 (E.D.N.Y. Feb. 22, 2005)..................12

*Baumer v. Pachl,*
    8 F.3d 1341 (9th Cir. 1993) ...........................................................................10

*In re BC Funding, LLC,*
    519 B.R. 394 (Bankr. E.D.N.Y. 2014)............................................................14

*Bridgewater v. Double Diamond-Delaware, Inc.,*
    No. CIV.A.3:09-CV-1758-B, 2010 WL 1875617 (N.D. Tex. May 10, 2010) ...........14

*Bryant v. Mattel, Inc.,*
    No. CV 04-9049 DOC RNBX, 2010 WL 3705668 (C.D. Cal. Aug. 2, 2010) ...........13

*Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv.,*
   *Inc.,*
    788 F.2d 535 (9th Cir. 1986) ........................................................................4, 5

*Canada v. Meracord, LLC,*
    No. C12-5657 BHS, 2013 WL 392492 (W.D. Wash. Jan. 31, 2013)...................6

*Cascade Yarns, Inc. v. Knitting Fever, Inc.,*
    No. C10-861 RSM, 2011 WL 31862 (W.D. Wash. Jan. 3, 2011) ...............6, 9

*Cisco Sys., Inc. v. STMicroelectronics, Inc.,*
    2015 WL 3488923 (N.D. Cal. June 2, 2015) ..................................................19

*Clear-View Techs., Inc. v. Rasnick,*
    No. 13-CV-02744-BLF, 2015 WL 3453529 (N.D. Cal. May 29, 2015) ..............1

*Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.,*
    235 F. Supp. 3d 1132 (E.D. Cal. 2017).........................................................15

*Congregacion de la Mision Provincia de Venezuela v. Curi*,
    978 F. Supp. 435 (E.D.N.Y. 1997) ........................................................13

*Consol. Elec. Co. v. U.S. for Use & Benefit of Gough Indus., Inc.*,
    355 F.2d 437 (9th Cir. 1966) ................................................................20

*Does 1-60 v. Republic Health Corp.*,
    669 F. Supp. 1511 (D. Nev. 1987) ..........................................................6

*Encompass Holdings, Inc. v. Daly*,
    No. C09-1816 BZ, 2010 WL 5088878 (N.D. Cal. Dec. 8, 2010) ....................9

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)............................................................12, 13

*First Cent. Sav. Bank v. Meridian Residential Capital*,
    No. 09-CV-3444 (DLI) (LB), 2011 WL 838910 (E.D.N.Y. Mar. 3, 2011)...............13

*Gilbert v. Bank of America*,
    2014 WL 4748494 (N.D. Cal. Sept. 23, 2014) ...........................................5

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 1997) ................................................................4

*Harmoni Int'l Spice, Inc. v. Wenxuan Bai*,
    No. CV1600614BROASX, 2016 WL 9275400 (C.D. Cal. Nov. 14, 2016) ..........5, 6

*Jefferson Pilot Life Ins. Co. v. Goold*,
    No. SACV03-36VAPANX, 2005 WL 5957832 (C.D. Cal. Nov. 15, 2005) ..........18

*Kidron v. Movie Acquisition Corp.*,
    40 Cal. App. 4th 1571 (1995) ..............................................................19

*Lennard, et al. v. Yeung, et al.*,
    2012 WL 13006214 (C.D. Cal. Feb. 23, 2012)..............................10, 17, 18

*Mezzonen, S.A. v. Wright*,
    No. 97 CIV. 9380 LMM, 1999 WL 1037866 (S.D.N.Y. Nov. 16, 1999)...................14

*Mir v. Greines, Martin, Stein & Richland*,
    No. 2:13-4132-CAS, 2015 WL 4139 (C.D. Cal. Jan. 12, 2015)...........................9

*Nasrawi v. Buck Consultants LLC*,
    231 Cal. App. 4th 328 (2014) ..............................................................17

*In re Nat. W. Life Ins. Deferred Annuities Litig.*,
    635 F. Supp. 2d 1170 (S.D. Cal. 2009).....................................................7

*Nat'l Bank of San Mateo v. Whitney*,
    40 Cal. App. 276 (1919) ......................................................................10

*Neilson v. Union Bank of California, N.A.*,
290 F. Supp. 2d 1101 (C.D. Cal. 2003) ...................................................................19

*Nisselson v. Lernout*,
469 F.3d 143 (1st Cir. 2006) ....................................................................10, 17

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) ...............................................................4, 7, 14, 20

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*,
298 F.3d 768 (9th Cir. 2002) ...................................................................11

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*,
133 Cal. App. 4th 658 (2005) ...............................................................10, 17

*Reves v. Ernst & Young*,
507 U.S. 170 (1993)...............................................................12, 13, 14

*Rocawear Licensing LLC v. Pacesetter Apparel Grp.*,
No. CV 06-3093 CJC, 2007 WL 5289737 (C.D. Cal. Sept. 12, 2007).......................5, 6

*Salinas v. United States*,
522 U.S. 52 (1997)...............................................................11

*Schreiber Distrib. Co. v. Serv–Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) ...................................................................4

*Tatung Co., Ltd. v. Shu Tze Hsu*,
217 F. Supp. 3d 1138 (C.D. Cal. 2016) ...............................................................19, 20

*Three Rivers Provider Network, Inc. v. Meritain Health, Inc.*,
2008 WL 2872664 (S.D. Cal. July 23, 2008) ...................................................................7

*Todaro v. Orbit Int'l Travel, Ltd.*,
755 F. Supp. 1229 (S.D.N.Y.1991)...............................................................13

*Triple A Management Co., Inc. v. Frisone*,
69 Cal. App. 4th 520 (1999) ...................................................................18

*United States v. Cervantes*,
170 F. Supp. 3d 1226 (N.D. Cal. 2016) ...................................................................12

*United States v. Elliott*,
571 F.2d 880 (5th Cir. 1978) ...................................................................7

*United States v. Fernandez*,
388 F.3d 1199 (9th Cir. 2004), *modified*, 425 F.3d 1248 (9th Cir. 2005) ....................................11

*United States v. Lothian*,
976 F.2d 1257 (9th Cir. 1992) ...................................................................15

*United States v. One Parcel of Land Located at 7326 Highway 45 N., Three Lakes, Oneida Cty., Wis.*,
965 F.2d 311 (7th Cir. 1992) ................................................................................19

*United States v. Oreto*,
37 F.3d 739 (1st Cir. 1994).................................................................................13

*United States v. Persico*,
832 F.2d 705 (2d Cir. 1987)................................................................................15

*United States v. Route 2, Box 472, 136 Acres More or Less*,
60 F.3d 1523 (11th Cir. 1995) ............................................................................18

*United States v. Stapleton*,
293 F.3d 1111 (9th Cir. 2002) ......................................................................15, 16

*United States v. Turkette*,
452 U.S. 576 (1981).............................................................................................7

*Van't Rood v. Cty. of Santa Clara*,
113 Cal. App. 4th 549 (2003) .............................................................................18

*In re Volkswagen*,
2017 WL 4890594 (N.D. Cal. Oct. 30, 2017)....................................................16

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
865 F. Supp. 2d 1002 (C.D. Cal. 2011) .......................................................15, 16

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
903 F. Supp. 2d 880 (C.D. Cal. 2012) .....................................................15, 16, 17

**Statutes**

18 U.S.C. § 1962(c) ...............................................................................11, 12, 15, 16

18 U.S.C. § 1965(a) .........................................................................................................4

18 U.S.C. § 1965(b) .............................................................................................. *passim*

S.C. Code Ann. § 33-44-102...................................................................................11, 17

**Rules**

Rule 9(b) ...........................................................................................................................4

Rule 12(b)(2)....................................................................................................................9

## INTRODUCTION

Defendants Annandale Plantation, LLC (Colorado) and Annandale Plantation, LLC (South Carolina) (together "the Annandale Defendants") make the conclusory claim that "they are fraudulently joined as Defendants in this lawsuit" (Dkt. #66 at 1.)  In so stating, these Defendants ignore Plaintiffs' allegations demonstrating they played a meaningful role in the RICO enterprise and were legal vehicles by which one of the scheme's masterminds, Danny Ray ("Ray"), was able to successfully commit and conceal his various frauds for well over a decade.  In fact, Plaintiffs were able to make these well-pled allegations even in the face of Ray's massive efforts to conceal and destroy relevant evidence.  (Dkt. # 60, First Am. Compl. ("FAC") ¶¶ 144-145; *id.* at ¶ 137 ("Ray has refused to confirm that after receiving the Monterey Plaintiffs' subpoena he did not subsequently delete transmittal emails documenting his transfer of MHPI Project related documents to the annandale.plantation@gmail.com email address.").  *See Clear-View Techs., Inc. v. Rasnick*, No. 13-CV-02744-BLF, 2015 WL 3453529, at *2 (N.D. Cal. May 29, 2015) (ruling that evidence destruction indicates "consciousness of guilt regarding the alleged conspiracy").  Accordingly, their motion to dismiss must be denied in full.

## BACKGROUND FACTS

Plaintiffs specifically allege that Ray used the Annandale Defendants as instrumental tools in his long-running RICO enterprise, to further his fraudulent gains, hide assets, carry on his frauds on the MHPI Projects, and later, to conceal documents to avoid detection of the fraud.  (FAC ¶¶ 18, 130, 135-36, 144-145)  The Annandale Defendants have been a material part of Defendants' scheme from the very beginning.  (*Id.*)

The first Annandale Defendant, a Colorado LLC, came into existence in December 2003, shortly after Ray defrauded the first MHPI Projects at Fort Meade, Fort Bragg, and the Presidio of Monterey.  (FAC ¶ 135.)  As part of these multi-million dollar loan transactions, Ray received 40% of GMAC's profits, taking millions of dollars of fraudulent proceeds for himself.  (*Id.* at ¶¶ 18, 130.)  Shortly after the Monterey Project closed, Ray parked much of these ill-gotten gains in $9 million worth of historical real estate, namely a tract of land totaling over three thousand acres known as the Annandale Plantation, near Ray's home in South Carolina.  (*Id.* at ¶¶ 18, 135.)  However, Ray did not

buy this real estate in his own name and instead set up LLCs to purchase the Annandale Plantation (originally with a Colorado entity known as Millbrook Plantation, LLC that thereafter changed its name to Annandale Plantation, LLC). (*Id.* at ¶135.) Ray was the sole agent and primary owner of this LLC since its inception. (*Id.*)

In October 2007, shortly after his Colorado LLC defaulted into delinquent status, and the RICO enterprise had closed on its last of the original Army financings at Fort Riley (in July 2006), Ray set up the second Annandale Defendant LLC in South Carolina, transferring ownership of his plantation holdings (purchased with RICO proceeds) from one entity to the other. (FAC ¶ 136.) Discovery in the related Debt Service Reserve Litigation with co-Defendant Ambac has revealed that Ray used the email address associated with these LLCs in connection with the long-running scheme. (*Id.*)

For example, in 2007, around the same time that he set up the South Carolina LLC and transferred his real estate holdings to it, Ray began to transact business related to the MHPI Projects using the Annandale Defendants' annandale.plantation@gmail.com email address. (FAC ¶ 136.) Thus, Ray began to intermingle the purportedly legitimate aspects of the Annandale Defendants (*e.g.*, historical preservation and conservation) with his illegitimate and criminal activity relating to the long-running scheme to defraud the MHPI Projects. (*Id.*) Ray directed his subordinates to communicate with him at the annandale.plantation@gmail.com address, no doubt in an effort to further conceal their illegal activity and thus keeping documents and communications from Jefferies' servers where they would be more easily discovered. (*Id.*) Specifically, annandale.plantation@gmail.com was used to communicate regarding the "follow on financing" at the Fort Bliss Project in 2012, as well as Ambac's 2015 purchase of MHPI bonds (which Jefferies and Ray orchestrated to allow Ambac to capitalize through the failed Debt Service Reserve Litigation). (*Id.*) Plaintiffs have alleged that the 2012 Bliss follow on financing was part of the fraudulent scheme and racketeering and that the 2015 bond purchases by Ambac (which Ray and Jefferies helped orchestrate) were designed to allow Ambac to further profit from the underlying fraudulent transactions. (FAC ¶¶ 26, 28, 110, 118-121 (detailing fraud in connection with 2012 Bliss financing); *id.* at ¶¶ 138-148 (detailing the 2015 MHPI bond transactions, which were used by Ambac to initiate litigation against the MHPI Projects during which Ray attempted to spoliate thousands of relevant documents).) Ray himself also regularly emailed

1  documents from his Jefferies email account to the annandale.plantation@gmail.com address.  (FAC ¶

2  136.)

3         Then, after failing to comply with a subpoena from the Monterey Project in related litigation,

4  Ray sought to judgment-proof himself by taking property out of his own name and transferring it to

5  his wife's name under suspicious circumstances.  (FAC ¶ 147.)  Indeed, just *eight days* after Ray was

6  confronted at a deposition with proof that he had attempted to delete over 9,000 documents from

7  Jefferies' servers (and the day after Jefferies' outside counsel informed Plaintiffs that it no longer

8  would represent Ray), Ray transferred millions of dollars of real estate to his wife in exchange for

9  "Five ($5.00) Dollars and Love and Affection."  (FAC ¶¶ 147-148.)  Ray's wife now is the majority

10  owner of the Annandale Defendants.  (*See* Dkt. #68, Joint Certification of Interested Entities or Parties

11  filed by Ray and the Annandale Defendants.)

12         Forensic analysis conducted thus far, though Ray and Ambac continue to withhold critical

13  electronic evidence that was the subject of a California court order, shows that Ray continued these

14  practices even after he was served with a subpoena in the Debt Service Reserve Litigation and

15  attempted to delete thousands of documents relating to the MHPI business from Jefferies' servers.  (*Id*.

16  at ¶¶ 144, 147.)  While Plaintiffs have sought assurances from Ray that he did not delete transmittal

17  emails     documenting     his     transfer     of     MHPI     Project-related     documents     to     the

18  annandale.plantation@gmail.com email address, Ray refused to provide them, creating the fair

19  inference that Ray destroyed relevant documents in the possession of the Annandale Defendants that

20  he controlled.  (*Id.* at ¶ 136.)

21         Thus, far from being peripheral figures within the ongoing RICO enterprise, the Annandale

22  Defendants were used by Ray to conceal and ostensibly legitimize the money he bilked from the MHPI

23  Projects, and to help execute the very conduct that Plaintiffs have alleged were fraudulent.

24                                        **LEGAL STANDARD**

25         In ruling on a motion to dismiss, the Court must "read the complaint in the light most favorable

26  to the non-moving party.  Allegations in the complaint, together with reasonable inferences therefrom,

27  are assumed to be true for purposes of the motion.  A dismissal for failure to state a claim pursuant to

28  12(b)(6) should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of

1   facts in support of his claim which would entitle him to relief.'"  *Odom v. Microsoft Corp.*, 486 F.3d

2   541, 545 (9th Cir. 2007) (quoting *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997)).

3   "Rule 9(b) 'requires the identification of the circumstances constituting fraud so that the defendant

4   can prepare an adequate answer from the allegations."  *Id.* at 553 (quoting *Schreiber Distrib. Co. v.*

5   *Serv–Well Furniture Co.,* 806 F.2d 1393, 1400 (9th Cir. 1986)).  "The only aspects of wire fraud that

6   require particularized allegations are the factual circumstances of the fraud itself."  *Id.*

7                                               <u>**ARGUMENT**</u>

8   **I.    PERSONAL JURISDICTION OVER THE ANNANDALE DEFENDANTS IS**
        **PROPER UNDER 18 U.S.C. § 1965(B).**
9

10          This Court may exercise jurisdiction under § 1965(b) where the Court has personal jurisdiction

11  over at least one Defendant, and there is no other district court that could exercise personal jurisdiction

12  over all of the Defendants.  *Butcher's Union Local No. 498, United Food & Commercial Workers v.*

13  *SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986) ("For nationwide service to be imposed under §

14  1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged

15  multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will

16  have personal jurisdiction over all of the alleged co-conspirators.").  As demonstrated in Plaintiffs'

17  opposition to the Ambac, Jefferies, Ray and Marfatia motions to dismiss, this Court possesses specific

18  jurisdiction over the remaining Defendants.  But this Court does not have personal jurisdiction over

19  the Annandale Defendants, either under California's long-arm statute or 18 U.S.C. § 1965(a) because

20  these entities have no clear connection to California and came into existence ***after*** Ray and his co-

21  conspirators successfully defrauded their first MHPI victims, including the Monterey Project.  (FAC

22  ¶¶ 65-66, 135-136.)  Critically, neither does the Southern District of New York.  But the Annandale

23  Defendants did join in the RICO enterprise from their respective inceptions, and assisted Ray and his

24  fellow co-conspirators in defrauding MHPI Project after MHPI Project at various locations across the

25  country.  (*See* FAC ¶ 73 (listing locations of the MHPI Plaintiff Projects).)

26          The Annandale Defendants are South Carolina and Colorado entities which own or owned

27  property exclusively in South Carolina and have South Carolina residents as their sole members.  (*Id.*;

28

*see also* Dkt. #68 (identifying Ray's wife as the majority owner of the Annandale Defendants).)[1]  Thus, because neither the Southern District of New York nor any other district court would have personal jurisdiction over all of the Defendants, "the ends of justice" are satisfied.  *Butcher's Union*, 788 F.2d at 537.  Indeed, Ambac has admitted in open court that the Court has personal jurisdiction over it.  Dkt. #86, 11/30/17 Hr'g Tr. 9:11-12 (Counsel for Ambac: "Well, certainly for our client, we believe -- we concede there would be jurisdiction").)  Pursuant to § 1965(b), this permits the Court to exercise jurisdiction over the Annandale Defendants because of their participation in Defendants' nationwide RICO enterprise and conspiracy.

**A.    Plaintiffs Allege A Single Nationwide Conspiracy And RICO Enterprise.**

The Annandale Defendants, in an effort to avoid the Court's jurisdiction, insist that Plaintiffs cannot satisfy § 1965(b) because they have failed to allege a "single nationwide conspiracy" similar to the failed pleadings in *Butcher's Union* and *Gilbert v. Bank of America,* 2014 WL 4748494 (N.D. Cal. Sept. 23, 2014).  Not so.  Plaintiffs allege a single nationwide enterprise, and the Court must, at the motion to dismiss stage, take those allegations as true.  *Harmoni Int'l Spice, Inc. v. Wenxuan Bai*, No. CV1600614BROASX, 2016 WL 9275400, at *9 (C.D. Cal. Nov. 14, 2016) (exercising personal jurisdiction over certain defendants pursuant to § 1965(b) in part because "the court must accept all uncontroverted allegations in the complaint as true" unless contradicted by affidavit) (citation omitted).

In both *Butcher's Union* and *Gilbert*, the courts determined there was no single nationwide conspiracy because the plaintiffs did not allege any connection between the defendants beyond that (1) the four employers merely used the same lawyers, but otherwise did not know of or participate in one another's criminal activities (*Butcher's Union*, 788 F.2d at 539 ("As the Unions concede, none of the four defendant employers had any specific knowledge of or participation in any of the other conspiracies.")); and (2) " the only connection between those two groups of defendants is that they are alleged to have done business with the MoneyMutual Defendants." *Gilbert*, 2014 WL 4748494, at *5.  Similarly, in *Rocawear Licensing LLC v. Pacesetter Apparel Grp.*, No. CV 06-3093 CJC, 2007 WL

---

[1]    No Defendant suggests (and no evidence supports) that Defendants Marfatia, Jefferies, or Ambac would be subject to personal jurisdiction in either the Districts of South Carolina or Colorado.

1   5289737 (C.D. Cal. Sept. 12, 2007), the court found a lack of a nationwide conspiracy where plaintiffs

2   attempted to allege that approximately *250 defendants* were engaged in a single nationwide conspiracy

3   to steal plaintiffs' trademark simply by the fact that defendants purchased counterfeit goods from a

4   single supplier. *Id.* at *6.

5          In contrast, Ray, who was at the helm of the RICO enterprise during its entire existence, used

6   the Annandale Defendants from the very beginning to help shelter his ill-gotten gains.  (FAC ¶ 135.)

7   What's more, there are connections between the other defendants and the Annandale Defendants.  As

8   alleged, Ray directed other employees at Jefferies to communicate and email documents to the

9   Annandale Defendants' email address with regard to the 2012 Bliss Project follow on financing.  (FAC

10  ¶ 136.)  Likewise, this same email address for the Annandale Defendants was used to receive and store

11  documents relating to Ambac's 2015 purchase of MHPI bonds owned by Freddie Mac, which Ray and

12  Jefferies helped orchestrate.  (FAC ¶¶ 136, 138-142.)  Thus, Plaintiffs' allegations are more akin to

13  those in *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861 RSM, 2011 WL 31862 (W.D. Wash.

14  Jan. 3, 2011), because Plaintiffs have alleged "specific communications made by individual

15  defendants" and the interconnectedness of the Defendants as part of their scheme to defraud a common

16  set of Plaintiffs: the MHPI Projects in more than a dozen different states.  *Cascade Yarns*, 2011 WL

17  31862, at *1.  (FAC ¶ 73.)  This is a sufficient unified and nationwide structure to satisfy § 1965(b)'s

18  requirements.  *Harmoni Int'l Spice*, 2016 WL 9275400, at *13 (C.D. Cal. Nov. 14, 2016) (finding

19  allegation that defendants "would not be subject to personal jurisdiction in New Mexico because

20  [defendant] is not a resident of New Mexico and neither [defendant]'s conduct in nor connections to

21  New Mexico are sufficient to establish minimum contacts there" sufficient to establish personal

22  jurisdiction under § 1965(b)); *Canada v. Meracord, LLC*, No. C12-5657 BHS, 2013 WL 392492, at

23  *3–4 (W.D. Wash. Jan. 31, 2013) (finding plaintiffs adequately pled a multi-district conspiracy as to

24  certain defendants sufficient to allow court to exercise jurisdiction pursuant to § 1965(b)); *see also*

25  *Does 1-60 v. Republic Health Corp.*, 669 F. Supp. 1511, 1518 (D. Nev. 1987) (finding nationwide

26  conspiracy where allegations "implicate[d] individuals and entities with close connections to

27  California, Nevada, Texas, and Delaware").

28

1    To require some specific unified structure, as the Annandale Defendants suggest is necessary

2    in order to satisfy § 1965(b), would run afoul of the later Ninth Circuit precedent that "an associated-

3    in-fact enterprise under RICO does not require any particular organizational structure."   *Odom v.*

4    *Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007); *see also United States v. Turkette*, 452 U.S. 576,

5    580–81 (1981) ("There is no restriction upon the associations embraced by the definition: an enterprise

6    includes any union or group of individuals associated in fact.").   Nor does RICO require that every

7    defendant be involved in every single aspect of the same RICO enterprise or that they commit predicate

8    acts in tandem.   *In re Nat. W. Life Ins. Deferred Annuities Litig.*, 635 F. Supp. 2d 1170, 1174 (S.D.

9    Cal. 2009) ("[A]ll members of the enterprise need not be directly working with all other members of

10   that enterprise."); *Three Rivers Provider Network, Inc. v. Meritain Health, Inc.*, 2008 WL 2872664, at

11   *5, *13 (S.D. Cal. July 23, 2008) (corporation, its senior officers, non-party vendors and clients

12   associated in fact for common purpose of defrauding plaintiffs even where "the alleged predicate acts

13   of mail and/or wire fraud do not involve each of the Defendants in each instance"); *United States v.*

14   *Elliott*, 571 F.2d 880, 899 (5th Cir. 1978) ("While earlier cases have considered enterprises engaged

15   in only one type of prohibited activity, a single enterprise engaged in diversified activities fits

16   comfortably within the proscriptions of the statute and the dictates of common sense[.]").

17   Curiously, while the Annandale Defendants argue that Plaintiffs have "at best" alleged two

18   separate conspiracies, one involving "Ray, GMAC (later Jefferies), Ambac and Marfatia." (Dkt. #66

19   at 7.)  Ray, who controls the Annandale Defendants, insisted to the contrary that Plaintiffs have pled

20   "a single scheme."   (Dkt. #64 at 18, n.4 ("The Complaint repeatedly alleges ***one unitary scheme***,

21   which Plaintiffs variously describe as "the GMAC scheme," the "Defendants' scheme," "the RICO

22   scheme," "the fraudulent scheme," the "long-running scheme," or simply "the scheme") (emphasis

23   added).)  And Ray should know, given his personal involvement in every facet of the scheme.

24   **B.    The Southern District Of New York Does Not Have Jurisdiction Over The Annandale Defendants Or Ray.**

25   The Annandale Defendants concede that, as pled in Plaintiffs' complaint, they are not subject

26   to jurisdiction in the Southern District of New York.   (FAC ¶¶ 65-66.)   As a result, this Court has

27   jurisdiction over all Defendants under § 1965(b).   While not necessary to the analysis, the Annandale

28

1  Defendants are incorrect that they are the only Defendants over which a court in the Southern District

2  of New York would not have personal jurisdiction.  (*See* Dkt. #66 at 5.)  There is no connection

3  between Ray's scant contacts with New York and the fraud in this lawsuit.  Ray's declaration,

4  submitted in connection with the Annandale Defendants' motion confirms this, as Ray makes clear

5  that for all relevant times he resided in either Colorado or South Carolina and worked almost

6  exclusively from those locations.  (Dkt. #64-1, ¶¶ 2-4.)

7      Ray has sworn that he closed the Monterey Project transaction while "working from the

8  Denver, Colorado" office of GMAC.  (*Id.* at 5.)  Indeed, the only connection Ray has alleged to have

9  was that from 1999 to 2009 he "worked from GMAC's [and Capmark's] office in New York City ***on***

10  ***occasion***" and from 2009 to 2016 that he "maintained an office" in Jefferies' headquarters in New

11  York City.  (*Id.* ¶¶ 2-4 (emphasis added).)  Tellingly, Ray avoids any statement under oath that he

12  conducted ***any business*** relating to the MHPI Projects while he was in New York.  Thus Ray, who at

13  all relevant times resided and worked in South Carolina and Colorado, likewise would not be subject

14  to personal jurisdiction in New York.[2]

15      **C.   Plaintiffs Adequately Plead The Annandale Defendants' Role In The RICO Conspiracy.**

16      The Annandale Defendants further argue that the Court cannot exercise jurisdiction under

17  § 1965(b) because Plaintiffs have not sufficiently alleged the Annandale Defendants' role in the RICO

18  conspiracy and enterprise.  (Dkt. #66 at 8-9.)  As discussed throughout, that is untrue, as the Annandale

19  Defendants are alleged to have been central to Ray's ability to conceal assets, maintain his legitimacy,

20  and furthermore were active participants in at least two specific aspects of the RICO enterprise: the

21  2012 Bliss follow on financing and Jefferies' orchestration of Ambac's 2015 MHPI Project bond

22  purchase.  (FAC ¶ 136.)

25  [2]  Ray's lack of contacts with New York, besides the fact his last employer, Jefferies, was in part based there is, of course, well known to the Annandale Defendants' counsel, who likewise

26  represent Ray.  This wholly undercuts the Annandale Defendants' conspiracy theories regarding why the Annandale Defendants are in this lawsuit.  (Dkt. #66 at 5 ("It is clear from both the

27  Amended Complaint and the other defendants' motions to dismiss that the only Defendants indisputably outside the jurisdiction of the Southern District of New York are the Annandale LLCs,

28  and their lack of contacts with New York appears to be the real reason for their inclusion in this action.").)

1      The Annandale Defendants' citation to *Encompass Holdings* is thus off-point.  In that case, the

2 court found jurisdiction under § 1965(b) lacking because the Plaintiff, seeking to recover damages

3 from a failed business venture, merely alleged that certain defendants "conspired with others to

4 conceal from him [another defendant's] security interest" in a business venture, but failed to otherwise

5 "explain [the defendant] role in the allege conspiracy" and failed to "tie these allegations into the

6 conspiracy." *Encompass Holdings, Inc. v. Daly*, No. C09-1816 BZ, 2010 WL 5088878, at *2 (N.D.

7 Cal. Dec. 8, 2010).  The court noted that the only fraudulent conduct the defendants in question were

8 alleged to have committed (a fraudulent claim in unrelated bankruptcy proceedings as well as allegedly

9 conspiring with a third party not named in the complaint to mislead *other* investors) was "irrelevant"

10 to the claims made.  *Id.* at *2, n.6.  But here, Plaintiffs have pled that Defendant Ray (a mastermind

11 of the RICO enterprise) used the Annandale Defendants:  (1) to purchase real estate in an effort to

12 legitimize and conceal his RICO proceeds fraudulently obtained *from Plaintiffs*; (2) used the accounts

13 of the Annandale Defendants to conduct business related to the MHPI Projects; and (3) to keep

14 documents from being maintained on Jefferies' servers where they were more likely to be detected.

15 (FAC ¶¶ 135-136.)

16      Unlike here, the plaintiff in *Encompass Holdings* merely pled that "some co-conspirators are

17 from diverse jurisdictions like Nevada, New York, Florida, New Jersey and California, [and therefore]

18 jurisdiction in another district would not be possible."  *Id.* at *3.  However, Plaintiffs have

19 affirmatively pled *why* the Annandale Defendants are not subject to jurisdiction in the Southern

20 District of New York.  (FAC ¶ 67.)  Importantly, neither Ray nor the Annandale Defendants have

21 contested this allegation in their respective motions to dismiss pursuant to Rule 12(b)(2).[3]  Similarly

22 *Mir v. Greines, Martin, Stein & Richland*, No. 2:13-4132-CAS (FFMx), 2015 WL 4139, at *13 (C.D.

23 Cal. Jan. 12, 2015) is distinguishable.  Plaintiffs have pled the Annandale Defendants' connection to

24 Jefferies and Ambac with "specific communications," *see Cascade Yarn*, 2011 WL 31862, at *1,

25 which involved annandale.plantation@gmail.com in connection with the Bliss Project's 2012 follow

26

---

27   [3]   Ray says only that "Plaintiffs have failed to allege facts showing that all of the participants in the
       Ray/Jefferies/Ambac/Marfatia conspiracy could not be haled into court in the Southern District of
28     New York." (Dkt. #64 at 10.)  The only support for this statement is a citation to the Annandale
       Defendants' motion, which as explained throughout this brief, fails to support such an argument.

on financing and Ray and Jefferies' orchestrating Ambac's purchase of MHPI Project bonds from Freddie Mac in 2015. (FAC ¶ 136.)

## II.  PLAINTIFFS SUFFICIENTLY ALLEGE RICO VIOLATIONS AGAINST THE ANNANDALE DEFENDANTS.

### A.  Plaintiffs Have Unquestionably Met Their Pleading Obligation Under § 1962(d).

The Annandale Defendants devote only nine lines to Plaintiffs' claim that they violated § 1962(d) (*see* Dkt. #66 at 9-10), no doubt because they recognize Plaintiffs have easily cleared their pleading hurdle with regard to this count.

The Annandale Defendants argue that Plaintiffs have insufficiently pled an agreement or manifestation by them to participate in the RICO enterprise, citing *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993). This argument makes little sense, because as at all relevant times, Ray (who was integrally involved in directing the RICO enterprise), was the sole agent and controlling owner of the Annandale Defendants. (FAC ¶ 135.) Under California law, the knowledge necessary for liability may also be imputed to a corporation by one of its controlling members. *See Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 679 (2005) (holding fraud properly imputed to corporation owned entirely by defendant and his wife and controlled by defendant); *see also Lennard, et al. v. Yeung, et al.*, 2012 WL 13006214, at *16 (C.D. Cal. Feb. 23, 2012) ("California courts and several federal appellate courts have held that alleging an individual owns and was the sole actor for a corporation is sufficient to plead imputed knowledge.); *Nat'l Bank of San Mateo v. Whitney*, 40 Cal. App. 276, 283-84 (1919) ("Where the agent is the sole representative of the principal in the transaction, and does not deal with the principal, or with any other agent acting for him, the general law of agency is still applicable, and the knowledge of the agent is imputed to the principal. In such a case it makes no difference that the agent has an opposing personal interest, or is engaged in a personal fraud against his principal"); *Nisselson v. Lernout*, 469 F.3d 143, 154-55 (1st Cir. 2006) ("[T]he fraudulent conduct of persons or entities who exercise complete control over a corporation may be imputed to the corporation when those actors have used the corporation as a vehicle for facilitation of the fraud"). Furthermore, South Carolina's statute of limited liability companies, which governs one of the Annandale Defendants, provides, "[a]n entity knows, has notice,

or receives a notification of a fact for purposes of a particular transaction when **the individual conducting the transaction for the entity** knows, has notice, or receives a notification of the fact, or in any event when the fact **would have been brought** to the individual's attention had the entity exercised reasonable diligence." S.C. Code Ann. § 33-44-102. As alleged, Ray conducted all transactions for the Annandale Defendants, and thus Ray's participation and Ray's knowledge can be imputed to the Annandale Defendants for purpose of § 1962(d) liability. (*See* FAC ¶ 135.)

The Annandale Defendants, citing *Howard v. America Online*, argue that Plaintiffs must allege an agreement "that is a violation of the RICO substantive act" or an agreement to commit two predicate acts. To the contrary, the Supreme Court has made clear that in order for a defendant to be liable under § 1962(d), a plaintiff need not allege or prove that a defendant agreed to commit two predicate acts.

> A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion. One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense. It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself. ***It makes no difference that the substantive offense under § 1962(c) requires two or more predicate acts.***

*Salinas v. United States*, 522 U.S. 52, 65 (1997) (emphasis added); *id.* at 66 ("Circuits [which] require in conspiracy cases that each conspirator himself commit or agree to commit two or more predicate acts . . . cannot be sustained . . . and [are] contrary to the principles" of conspiracy liability).

Nor does § 1962(d) require an explicit agreement. *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002) ("The illegal agreement need not be express as long as its existence can be inferred from the words, actions, or interdependence of activities and persons involved. If a RICO conspiracy is demonstrated, "[a]ll conspirators are liable for the acts of their co-conspirators."). And the "operation or management" test (discussed below) does not apply to § 1962(d). *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004), *modified*, 425 F.3d 1248 (9th Cir. 2005) (holding there is no "requirement that the defendant have actually conspired to operate

1  or manage the enterprise" but merely that co-conspirator "knowingly agree[d] to facilitate a scheme

2  which includes the operation or management of a RICO enterprise").

3         Finally, Plaintiffs need not allege any overt acts on the part of the Annandale Defendants in

4  furtherance of the RICO conspiracy. *United States v. Cervantes*, 170 F. Supp. 3d 1226, 1230–31 (N.D.

5  Cal. 2016) ("For RICO conspiracy, "[t]here is no requirement of some overt act or specific act ...,

6  unlike the general conspiracy provision applicable to federal crimes, which requires that at least one

7  of the conspirators have committed an 'act to effect the object of the conspiracy.' "*[I]n order to

8  convict a defendant on a RICO conspiracy charge, [the court] 'does not require proof that [a

9  defendant] participated personally, or agreed to participate personally, in two predicate offenses.*'")

10 (citations omitted and emphasis added).

11     **B.    Plaintiffs Have Sufficiently Pled the Annandale Defendants' Role in Operating
              the RICO Enterprise.**

12        The Annandale Defendants would have the Court believe that only persons at the top of the

13 RICO enterprise may be held liable.  (Dkt. #66 at 10.)  That is untrue.  While liability under § 1962(c)

14 requires that a plaintiff plead that a defendant had a role in the operation or management of a RICO

15 enterprise, only "*some* part in directing the enterprise's affairs is required."  *Reves v. Ernst & Young*,

16 507 U.S. 170, 179 (1993) (italics in original).  Indeed, RICO's statutory text holds liable those who

17 "conduct *or participate*" in a RICO enterprise, 18 U.S.C. § 1962(c) (emphasis added), and the Supreme

18 Court made clear that "the word 'participate' makes clear that RICO liability is not limited to those

19 with primary responsibility for the enterprise's affairs."  *Reves*, 507 U.S. at 179.  Thus, the operation

20 or management test poses "a relatively low hurdle for plaintiffs to clear, especially at the pleading

21 stage."  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004) (citations

22 omitted); *Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*, No. CV-042934ERK, 2005 WL 3710370, at *8

23 (E.D.N.Y. Feb. 22, 2005) (citation omitted) ("It is not always reasonable, however, to expect that when

24 a defrauded plaintiff frames his complaint, he will have available sufficient factual information

25 regarding the inner workings of a RICO enterprise to determine whether a defendant was merely

26 "substantially involved" in the RICO enterprise or participated in the "operation or management" of

27

28

the enterprise.  Thus, where the role of the particular defendant in the RICO enterprise is unclear, plaintiffs may well be entitled to take discovery on this question.").

It would be a distortion of Plaintiffs' allegations to characterize the Annandale Defendants as "outsiders" such as an attorney or an accountant, who only plays a peripheral role in the enterprise by providing his or her services, which is the policy underlying *Reves*.  *See, e.g., United States v. Oreto*, 37 F.3d 739, 750 (1st Cir. 1994) ("*Reves* is a case about the liability of *outsiders* who may assist the enterprise's affairs"); *131 Main St. Assocs. v. Manko,* 897 F. Supp. 1507, 1527 (S.D.N.Y. 1995) ("The operation-or-management rule is intended to spare from RICO liability true enterprise outsiders."); *see also Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 918 (8th Cir. 2001) ("To direct a business's normal activities is to participate in the conduct of an enterprise within the meaning of RICO[.]").  In contrast, they were key instrumentalities of Ray, the mastermind of the entire conspiracy.

The Annandale Defendants ask the Court to ignore Plaintiffs' allegations and conclude that they are merely passive entities that Plaintiffs allege did no more than receive Defendant Ray's ill-gotten gains.  (Dkt. #66 at 10-11 (citing *First Cent. Sav. Bank v. Meridian Residential Capital*, No. 09-CV-3444 (DLI) (LB), 2011 WL 838910, at *10 (E.D.N.Y. Mar. 3, 2011) and *Congregacion de la Mision Provincia de Venezuela v. Curi*, 978 F. Supp. 435, 450 (E.D.N.Y. 1997)).)  *First*, where defendants deprive plaintiffs of property and then seek to conceal those assets, a scheme to defraud (thus mail and wire fraud and thus a pattern of racketeering) is properly pled.  *See Bryant v. Mattel, Inc.,* No. CV 04-9049 DOC RNBX, 2010 WL 3705668, at *7 (C.D. Cal. Aug. 2, 2010) ("As a general matter, a scheme to nefariously conceal assets can be a scheme to deprive another of business or property through false or fraudulent pretenses.  The alleged scheme need not have been successful to be wrongful, since mere "intent to deprive the victim of money or property can give rise to a claim under the mail fraud and/or wire fraud statutes."); *see also Todaro v. Orbit Int'l Travel, Ltd.,* 755 F. Supp. 1229, 1236 (S.D.N.Y.1991) (finding pattern of racketeering activity based upon a scheme to defraud and to subsequently "protect those [stolen] assets from judgment").  The Annandale Defendants may contest or disagree with Plaintiffs' allegations, but the Court must take them as true

1   for purposes of this motion.  *Odom*, 486 F.3d at 545 ("Allegations in the complaint, together with

2   reasonable inferences therefrom, are assumed to be true for purposes of the motion.").

3       **Second**, contrary to the Annandale Defendants' assertions, Plaintiffs have alleged more than

4   simply passive receipt of funds.  Plaintiffs allege that Ray and his co-conspirators used the Annandale

5   Defendants substantively in connection with the MHPI transactions themselves, through use of the

6   annandale.plantation@gmail.com email address.  (FAC ¶ 136.)  It is well settled that these allegations,

7   showing not only use of these entities to conceal assets but also to conduct the fraud, are sufficient to

8   show their participation in the RICO enterprise.  *In re BC Funding, LLC*, 519 B.R. 394, 421 (Bankr.

9   E.D.N.Y. 2014) ("The Plaintiff alleges that HASG is not a consulting company but is actually a shell

10  company for Sharf to deposit and hide funds stolen from BCF. . . .  Since the Plaintiff specifically

11  alleges that HASG and Muhlstock & Associates were not "professional service providers," but rather

12  were active participants in the conspiracy they are not granted protection under *Reves*.") (citations

13  omitted); *Mezzonen, S.A. v. Wright*, No. 97 CIV. 9380 LMM, 1999 WL 1037866, at *11 (S.D.N.Y.

14  Nov. 16, 1999) ("This Court holds that Mezzonen has alleged sufficient facts to create an inference

15  that Martini, as well as his alter ego Intram, participated in the operation and management of the

16  Wright Enterprise. . . . [W]hen the valuations are coupled with the allegations that some of Mezzonen's

17  funds ended up in Martini's control, a reasonable inference that Martini was more intricately involved

18  in the Wright Enterprise arises."); *Bridgewater v. Double Diamond-Delaware, Inc.,* No. CIV.A.3:09-

19  CV-1758-B, 2010 WL 1875617, at *11 (N.D. Tex. May 10, 2010) ("Defendants argue that Double

20  Diamond Delaware and the White Bluff defendants, as 'merely passive recipients of the alleged

21  Hospitality Assessments' did not participate sufficiently to support their liability under the statute.

22  The proscriptions of the RICO statute have broad reach; the 'RICO net is woven tightly to trap even

23  the smallest fish, those peripherally involved with the enterprise.'"  The statute 'makes clear that RICO

24  liability is not limited to those with a formal position in the enterprise,' nor does it require 'primary

25  responsibility' or 'significant control.'") (citations omitted) (denying motion to dismiss).

26

27

28

1

**C.    Plaintiffs Need Not Plead Two Predicate Acts Committed by the Annandale Defendants in Order to Plead a Violation of § 1962(c).**

2

The Annandale Defendants are incorrect that Plaintiffs "must allege at least two predicate acts

3

by each defendant."  (Dkt. #66 at 11 (citing *Comm. to Protect Our Agric. Water v. Occidental Oil &*

4

*Gas Corp.*, 235 F. Supp. 3d 1132, 1177 (E.D. Cal. 2017).)  With respect to the court in *Occidental Oil*,

5

this is an incorrect statement of what RICO requires in a multi-defendant case and inconsistent with

6

established Ninth Circuit law.  In support of this position, *Occidental Oil* relies on *In re WellPoint,*

7

*Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 914 (C.D. Cal. 2012), which supported

8

this supposed proposition with a citation to its own earlier decision in *In re WellPoint, Inc. Out-of-*

9

*Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011), as well as the Second

10

Circuit's decision in *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987).[4]  But *Persico* is a case

11

concerning the criminal statute of limitations under RICO.  832 F.2d at 714 ("[W]e conclude that in

12

order to satisfy the statute of limitations for § 1962(c), the government must demonstrate that a

13

defendant committed at least one predicate racketeering act within the limitations period.").  It did not

14

hold that a plaintiff must allege two predicate acts of mail or wire fraud committed by each individual

15

defendant.

16

Furthermore, as the court in *In re WellPoint* went on to note, "the complaint need not identify

17

false statements made by each and every individual," but rather plaintiffs need only "identify the role

18

of each defendant in the alleged fraudulent scheme."  903 F. Supp. 2d at 914.  This is consistent with

19

the broad encapsulation of mail and wire fraud recognized by the Ninth Circuit.  The mail and wire

20

fraud statutes' "scheme to defraud" elements are "treated like conspiracy in several respects."  *United*

21

*States v. Stapleton*, 293 F.3d 1111, 1117 (9th Cir. 2002) (quoting *United States v. Lothian*, 976 F.2d

22

1257, 1262 (9th Cir. 1992)).  Thus, a defendant may be liable for mail or wire fraud if (1) a defendant

23

knowingly participates in a scheme to defraud; (2) a defendant has intent to defraud; and (3) a co-

24

schemer or co-conspirator committed acts of mail or wire fraud during the defendant's participation in

25

the scheme.  *Stapleton*, 293 F.3d at 1119.

26

27

---

28

[4]    As opinions from other district courts in the Ninth Circuit and the Second Circuit, neither of these decisions is controlling authority on this Court.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Indeed, the Annandale Defendants' precise argument was analyzed in depth, and rejected, in a recent decision from this District. *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. MDL 2672 CRB (JSC), 2017 WL 4890594, at *13 (N.D. Cal. Oct. 30, 2017). In *Volkswagen*, the court rejected the Annandale Defendants' argument (and *In re WellPoint* to the extent it is consistent with this argument) as contrary to the Ninth Circuit's opinion in *Stapleton*:

> In arguing against co-schemer liability for mail and wire fraud, Bosch also relies on *WellPoint*. In discussing RICO's "pattern" element, the district court there held that "[w]here RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by *each* defendant." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011). The *WellPoint* court went on to note, though, that "the complaint need not identify false statements made by each and every individual," but rather the plaintiff need only "identify the role of each defendant in the alleged fraudulent scheme." *Id.* at 1036 (citation omitted). **WellPoint, then, is not necessarily inconsistent with *Stapleton*. And to the extent *WellPoint* is inconsistent, the Ninth Circuit's *Stapleton* decision controls.**

*Volkswagen*, 2017 WL 4890594, at *13 (emphasis added). This is because, to prove a violation of the mail or wire fraud statutes, "the misrepresentation does not need to be made through the mails or wires; rather, the use of the mails or wires only needs to be 'a step in the plot.' The misrepresentation also does not need to be made to the RICO plaintiff, but instead may be made to a third-party." *Id.* at *11 (citations omitted). "Like co-conspirators, 'knowing participants in the scheme are legally liable' for their co-schemers' use of the mails or wires." *Stapleton*, 293 F.3d at 1117 (citation omitted). This makes sense, as RICO's statutory language makes clear, it punishes those who "conduct or participate" in an enterprise through a pattern of racketeering activity, not simply those who commit wire or mail fraud twice. 18 U.S.C. § 1962(c); *Volkswagen*, 2017 WL 4890594, at *12 ("Bosch misconstrues the RICO statute . . . § 1962(c) makes it unlawful to participate in 'a pattern of racketeering activity.'"). The Annandale Defendants misconstrue RICO, just like the Bosch-defendants in *Volkswagen*.

Regardless, while not required to do so, Plaintiffs have pled two acts of wire fraud against the Annandale Defendants in the form of two email transmissions relating to Defendants' long-running scheme. (FAC ¶ 136 (discussing emails sent with the Annandale Defendnats' email address relating to the 2012 Bliss Project follow on financing and Ambac's 2015 purchase of MHPI Project bonds).) In support of their argument, the Annandale Defendants assert that Plaintiffs "offer[] no facts

1  demonstrating that the Annandale LLCs 'caused' Ray to forward those emails" but offer no legal

2  citation.  (Dkt. #66 at 11.)  That is because, as discussed above, Ray's knowledge, as sole agent and

3  controlling owner of the Annandale Defendants is imputed to them for purposes of liability.

4  Furthermore, even if those emails themselves were not fraudulent, or sent to plaintiffs, they need not

5  be in order to constitute wire fraud.  *In re WellPoint*, 903 F. Supp. 2d at 913 ("The predicate

6  transmissions do not have to be alleged as false or contain misrepresentations; they need only be in

7  furtherance of a scheme to defraud.").

8  **III.  PLAINTIFFS SUFFICIENTLY PLEAD THE ANNANDALE DEFENDANTS' ROLE IN AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY.**

9

10  "The elements of a claim for aiding and abetting a breach of fiduciary duty are: (1) a third

11  party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach

12  of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's

13  breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff."  *Nasrawi v.*

14  *Buck Consultants LLC*, 231 Cal. App. 4th 328, 343 (2014).  The Annandale Defendants claim that

15  aiding-and-abetting liability cannot arise from imputing Ray's knowledge of and participation in the

16  scheme.  (Dkt. #66 at 13-14.)  This is incorrect, as Ray's position as agent and controlling member of

17  the Annandale Defendants results in an imputation of his knowledge to the Annandale Defendants.

18  *Peregrine Funding*, 133 Cal. App. 4th at 679 (holding fraud properly imputed to corporation owned

19  entirely by defendant and his wife and controlled by defendant); *Lennard*, 2012 WL 13006214, at *16

20  ("California courts and several federal appellate courts have held that alleging an individual owns and

21  was the sole actor for a corporation is sufficient to plead imputed knowledge."); *Nisselson*, 469 F.3d

22  at 154 ("[T]he fraudulent conduct of persons or entities who exercise complete control over a

23  corporation may be imputed to the corporation when those actors have used the corporation as a

24  vehicle for facilitation of the fraud"); S.C. Code Ann. § 33-44-102.  Ray is and was the controlling

25  member of the Annandale Defendants.  The Annandale Defendants' knowledge coincides entirely

26  with Ray's.  (FAC ¶ 135 ("At all relevant times, Ray operated and acted as agent for the Annandale

27  Defendants.  The Annandale Plantation Defendants had no other agents or employees other than

28  Ray.").)  As alleged, Ray conducted all transactions for the Annandale Defendants (*see* FAC ¶ 135)

1    and had full knowledge of the fraudulent scheme by which he was earning profits and then funneling

2    them to the Annandale Defendants.  The Annandale Defendants cannot stick their heads in the sand

3    and claim their knowledge is distinct from that of their controlling member Ray, especially where he

4    is one of only two members and has been actively using Annandale in service of his wrongdoing.

5    Moreover, the Annandale Defendants were not wholly detached from the Projects and the conspiracy,

6    as Ray funneled profits from the conspiracy into the LLCs, and used their Annandale email account

7    to communicate and store information related to the conspiracy.  (*See* FAC ¶¶ 135-36.)

8         The Annandale Defendants' cited case law is inapposite. They cite several California cases

9    concerning the imputation of knowledge in circumstances in which agents have limited authority or

10   limited agency.  (Dkt. # 66 at 14.)  For example, in *Triple A Management Co., Inc. v. Frisone*, 69 Cal.

11   App. 4th 520, 534 (1999), the agency at issue was limited in scope by law, as the agent at issue was

12   an escrow in a real estate transaction and "the escrow agent is only a limited or special agent, and his

13   obligations to disclose matters to his principal are also limited[.]"  *See also Van't Rood v. Cty. of Santa

14   Clara*, 113 Cal. App. 4th 549, 574 (2003) (scope of agency limited by contract); *Jefferson Pilot Life

15   Ins. Co. v. Goold*, No. SACV03-36VAPANX, 2005 WL 5957832, at *1 (C.D. Cal. Nov. 15, 2005)

16   (discussing agency in context of a motion *in limine* and ruling that knowledge resulting from agency-

17   relationship with a competitor cannot be imputed to a different unrelated company).  This argument

18   wholly ignores that Ray's agency, as alleged, was without any limitation, as he was the sole agent

19   acting on behalf of these LLCs.  (FAC ¶ 135 ("At all relevant times, Ray operated and acted as agent

20   for the Annandale Defendants.  The Annandale Defendants had no other agents or employees other

21   than Ray.").)  Both California and federal courts have held that alleging an individual owns and was

22   the sole actor for a corporation is sufficient to plead imputed knowledge.  *Lennard*, 2012 WL

23   13006214, at *16 (C.D. Cal. Feb. 23, 2012) (collecting cases).  And *Abrahim & Sons Enterprises v.

24   Equilon Enterprises, LLC*, 292 F.3d 958, 962 (9th Cir. 2002) concerns *alter ego* liability for LLCs

25   wholly owned by another corporation and thus is not on point.  Finally, the Annandale Defendants'

26   citation to out-of-circuit cases involving imputation of knowledge in forfeiture proceedings dealt with

27   the specific "innocent owner defense" implicated in such forfeiture proceedings and thus are factually

28   distinguishable.  *See United States v. Route 2, Box 472, 136 Acres More or Less*, 60 F.3d 1523, 1524

1  (11th Cir. 1995); *United States v. One Parcel of Land Located at 7326 Highway 45 N., Three Lakes,*

2  *Oneida Cty., Wis.*, 965 F.2d 311, 320 (7th Cir. 1992).

3        The Annandale Defendants further argue that Plaintiffs fail to establish any causation between

4  the Annandale Defendants' role and the harm suffered by the Projects. (Dkt. #66 at 15-16.) The

5  causation element is met where a defendant is alleged to have allowed itself to be used to facilitate the

6  breach. *See Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1109 (C.D. Cal. 2003)

7  (denying motion to dismiss where banks were alleged to have assisted Ponzi scheme by providing "(1)

8  a steady flow of new money; (2) a mechanism for managing investors' custodial accounts; and (3) an

9  aura of legitimacy that allowed the scheme to flourish"). Here, the Annandale Defendants—whose

10  knowledge of the scheme coincided with Ray's—has served as a financial shelter for Ray's ill-gotten

11  gains for years and provided a means to conceal his communications related to the conspiracy. (*See*

12  FAC ¶¶ 135-36.) Ray's ability to operate off-the-radar emboldened him in his conduct of the fee-

13  taking scheme. Despite Annandale's argument, Ray plainly considered Annandale necessary to his

14  scheme, otherwise he would not have considered it necessary to direct subordinates to send him

15  communications at the annandale.plantation@gmail.com account. (*See* FAC ¶ 136.).

16  **IV.**     **PLAINTIFFS SUFFICIENTLY PLEAD THE ANNANDALE DEFENDANTS' ROLE**

17  **IN THE CONSPIRACY TO COMMIT FRAUD.**

18        Under California law, "[t]he elements of an action for civil conspiracy are (1) the formation

19  and operation of the conspiracy and (2) damage resulting to plaintiff from (3) an act or acts done in

20  furtherance of the common design." *Cisco Sys., Inc. v. STMicroelectronics, Inc.*, 2015 WL 3488923,

21  at *3 (N.D. Cal. June 2, 2015) (internal citations omitted). "To be liable, an alleged conspirator must

22  have knowledge of the planned tort and intent to aid in its commission." *Tatung Co., Ltd. v. Shu Tze*

23  *Hsu*, 217 F. Supp. 3d 1138, 1183 (C.D. Cal. 2016) (citing *Kidron v. Movie Acquisition Corp.*, 40 Cal.

24  App. 4th 1571, 1582 (1995) (internal citations omitted). Again, the Annandale Defendants argue they

25  lacked the knowledge or intent necessary for a conspiracy to commit fraud. (Dkt. #66 at 16-17.)

26  However, as discussed above, the Annandale Defendants possessed the knowledge of Ray, who was

27  fully aware of the fraud and, as the controlling member of the Annandale Defendants, actively used

28  Annandale in furtherance of the scheme by funneling ill-gotten profits into their assets and using them

as a means to engage in off-the-radar communications regarding the fraudulent scheme.  (FAC ¶¶ 135-136.)

Furthermore, dismissal of this claim at this stage on the basis of disputed facts as to what the Annandale Defendants did or did not know is inappropriate.  *See Tatung Co*, 217 F. Supp. 3d at 1183 ("When an issue requires determination of state of mind, it is unusual that disposition may be made by summary judgment.") (quoting *Consol. Elec. Co. v. U.S. for Use & Benefit of Gough Indus., Inc.*, 355 F.2d 437, 438 (9th Cir. 1966).  Based only on the limited factual record available, the Projects have made out a plausible claim of the Annandale Defendants' knowledge of the fraudulent scheme and intent to aid the scheme, by virtue of the knowledge and intent of their controlling member Ray, who used the Annandale Defendants accordingly.  At the pleading stage, that is all that is required.  *Odom*, 486 F.3d at 545 ("Allegations in the complaint, together with reasonable inferences therefrom, are assumed to be true for purposes of the motion.  A dismissal for failure to state a claim pursuant to 12(b)(6) should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (citation omitted).  Fact discovery will permit the Projects to develop the record sufficiently to permit disposition either on summary judgment or, more appropriately, at trial.

## **CONCLUSION**

For the foregoing reasons, the Annandale Defendants' motion should be denied, given their central role under Defendant Ray's direction in perpetuating a nationwide RICO enterprise through a pattern of racketeering activity against Plaintiffs.

1   DATED:  December 15, 2017                Respectfully submitted,

2                                           KIRKLAND & ELLIS LLP

3
                                            By:    /s/ Donna M. Welch, P.C.
4                                           Michael P. Esser (SBN 268634)
                                            KIRKLAND & ELLIS LLP
5                                           555 California Street
                                            San Francisco, CA 94104
6                                           Telephone: (415) 439-1400
                                            Facsimile: (415) 439-1500
7                                           Email: michael.esser@kirkland.com

8                                           Jeffrey L. Willian, P.C. (*pro hac vice*)
                                            Donna M. Welch, P.C. (*pro hac vice*)
9                                           KIRKLAND & ELLIS LLP
                                            300 North LaSalle
10                                          Chicago, IL 60654
                                            Telephone: (312) 862-2000
11                                          Facsimile: (312) 862-2200
                                            Email: jwillian@kirkland.com
12                                          Email: dwelch@kirkland.com

13                                          Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 15, 2017 a copy of the foregoing document is being

electronically filed with the Clerk of the United States District Court of the Northern District of

California by using the CM/ECF system, which will send notice of such filing to all counsel of

record.

DATED:  December 15, 2017                    Respectfully submitted,

KIRKLAND & ELLIS LLP

By:    /s/ Donna M. Welch, P.C.
Michael P. Esser (SBN 268634)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: michael.esser@kirkland.com

Jeffrey L. Willian, P.C. (*pro hac vice*)
Donna M. Welch, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: jwillian@kirkland.com
Email: dwelch@kirkland.com

Attorneys for Plaintiffs