1 | Michael P. Esser (SBN 268634)
KIRKLAND & ELLIS LLP
2 | 555 California Street
San Francisco, CA 94104
3 | Telephone: (415) 439-1400
Facsimile: (415) 439 1500
4 | Email:  michael.esser@kirkland.com

5 | Jeffrey L. Willian, P.C. (*pro hac vice*)
Donna M. Welch, P.C. (*pro hac vice*)
6 | KIRKLAND & ELLIS LLP
300 North LaSalle
7 | Chicago, IL 60654
Telephone: (312) 862-2000
8 | Facsimile: (312) 862-2200
Email:  jwillian@kirkland.com
9 | Email:  dwelch@kirkland.com

10 | Attorneys for Plaintiffs

11 | **UNITED STATES DISTRICT COURT**

12 | **NORTHERN DISTRICT OF CALIFORNIA**

13 | **SAN JOSE DIVISION**

| | |
|---|---|
| 14 MONTEREY BAY MILITARY HOUSING, LLC, MONTEREY BAY LAND, LLC, MEADE 15 COMMUNITIES LLC, FORT BLISS/WHITE SANDS MISSILE RANGE HOUSING LP, RILEY 16 COMMUNITIES LLC, FORT LEAVENWORTH FRONTIER HERITAGE COMMUNITIES, I, LLC, 17 FORT LEAVENWORTH FRONTIER HERITAGE COMMUNITIES, II, LLC, CARLISLE/ PICATINNY 18 FAMILY HOUSING LP, BRAGG COMMUNITIES LLC, FORT DETRICK/WALTER REED ARMY 19 MEDICAL CENTER LLC, PICERNE-FORT POLK FUNDING, LLC, RUCKER COMMUNITIES LLC, 20 STEWART HUNTER HOUSING LLC, SILL HOUSING, LLC, AETC HOUSING LP, AMC WEST 21 HOUSING LP, LACKLAND FAMILY HOUSING, LLC, and VANDENBERG HOUSING LP, 22 | Case No. 5:17-cv-04992-BLF (NC) Judge: Honorable Beth Labson Freeman **PLAINTIFFS' OPPOSITION TO THE JEFFERIES DEFENDANTS' MOTION TO DISMISS AND MOTION TO TRANSFER** Date: April 12, 2018 Time: 9:00 a.m. Dept:  Courtroom 3 The Hon. Beth Labson Freeman Complaint Filed: August 28, 2017 |

14 | MONTEREY BAY MILITARY HOUSING, LLC, MONTEREY BAY LAND, LLC, MEADE
15 | COMMUNITIES LLC, FORT BLISS/WHITE SANDS MISSILE RANGE HOUSING LP, RILEY
16 | COMMUNITIES LLC, FORT LEAVENWORTH FRONTIER HERITAGE COMMUNITIES, I, LLC,
17 | FORT LEAVENWORTH FRONTIER HERITAGE COMMUNITIES, II, LLC, CARLISLE/ PICATINNY
18 | FAMILY HOUSING LP, BRAGG COMMUNITIES LLC, FORT DETRICK/WALTER REED ARMY
19 | MEDICAL CENTER LLC, PICERNE-FORT POLK FUNDING, LLC, RUCKER COMMUNITIES LLC,
20 | STEWART HUNTER HOUSING LLC, SILL HOUSING, LLC, AETC HOUSING LP, AMC WEST
21 | HOUSING LP, LACKLAND FAMILY HOUSING, LLC, and VANDENBERG HOUSING LP,

22 |                 Plaintiffs,
23 |         vs.

24 | AMBAC ASSURANCE CORPORATION, JEFFERIES MORTGAGE FINANCE, INC.,
25 | JEFFERIES & COMPANY, INC., JEFFERIES LLC, JEFFERIES GROUP LLC, DANNY RAY,
26 | ANNANDALE PLANTATION, LLC, ANNANDALE PLANTATION, LLC,  and CHETAN MARFATIA,

27 |                 Defendants.

28 |

Case No. 5:17-cv-04992-BLF (NC)

Judge: Honorable Beth Labson Freeman

**PLAINTIFFS' OPPOSITION TO THE JEFFERIES DEFENDANTS' MOTION TO DISMISS AND MOTION TO TRANSFER**

Date: April 12, 2018

Time: 9:00 a.m.

Dept:  Courtroom 3

The Hon. Beth Labson Freeman

Complaint Filed: August 28, 2017

## TABLE OF CONTENTS

**Page**

INTRODUCTION..................................................................................................1

BACKGROUND FACTS ........................................................................................1

LEGAL STANDARD .............................................................................................3

ARGUMENT ..........................................................................................................4

I.    Plaintiffs Have Adequately Alleged Personal Jurisdiction. ...................4

    A.    Jefferies Is Subject To Personal Jurisdiction Under California's Long Arm Statute. ......................................................4

    B.    Jefferies Cannot Escape The Reach Of RICO Section 1965(b). ...........5

    C.    Section 1965(a) Establishes Personal Jurisdiction Over Jefferies. ..........8

II.   Plaintiffs' Claims are Not Barred by the Statute of Limitations.............9

III.  Plaintiffs Adequately Allege a RICO Enterprise and Pattern of Racketeering Activity. ..........................................................................11

    A.    Plaintiffs Adequately Allege An Association In Fact Enterprise And Jefferies' Participation In Its Operation.....................................11

    B.    Plaintiffs Adequately Alleged Racketeering Activity...............................13

IV.   Plaintiffs Adequately Allege Conspiracy Claims Against Jefferies.................17

V.    Plaintiffs Adequately Allege Breach of Fiduciary Duty Against Jefferies...................18

VI.   Plaintiffs Adequately Allege Aiding and Abetting a Breach of Fiduciary Duty Against Jefferies. ........................................................21

VII.  Plaintiffs Adequately Allege Intentional Misrepresentation by Jefferies.....................22

VIII. Jefferies' Motion to Transfer Must Be Denied..................................24

CONCLUSION ......................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alliance Mortgage v. Rothwell*,
10 Cal.4th at 1226, 1240 (1995) ........................................................................11

*In re Aluminum Warehousing Antitrust Litig.*,
90 F.Supp.3d 219 (S.D.N.Y. 2015)........................................................................7

*Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*,
94 F.3d 586 (9th Cir. 1996), *supplemented,* 95 F.3d 1156 (9th Cir. 1996) ....................................4

*AngioScore, Inc. v. TriReme Med., LLC*,
70 F. Supp. 3d 951 (N.D. Cal. 2014) ........................................................................22

*Applied Underwriters, Inc. v. Combined Mgmt., Inc.*,
No. C07-5129 BZ, 2007 WL 4287322 (N.D. Cal. Dec. 5, 2007)........................................4

*Barantsevich v. VTB Bank*,
954 F. Supp. 2d 972 (C.D. Cal. 2013) ................................................................8, 9

*Baumer v. Pachl*,
8 F.3d 1341 (9th Cir. 1993) ........................................................................17

*Boyle v. United States*,
556 U.S. 938 (2009)........................................................................11

*Bristol-Myers Squibb Co. v. Superior Court of Cal., S. F. Cty.*,
137 S. Ct. 1773 (2017) ........................................................................9

*Bulk Oil (USA) Inc. v. Sun Oil Trading Co.*,
584 F. Supp. 36 (S.D.N.Y. 1983)........................................................................8

*Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*,
788 F.2d 535 (9th Cir. 1986) ........................................................................6

*Canada v. Meracord, LLC*,
No. C12-5657 BHS, 2013 WL 392492 (W.D. Wash. Jan. 31, 2013)........................................6

*Cedric Kushner Promotions, Ltd. v. King*,
533 U.S. 158 (2001)........................................................................13

*Cervantes v. City of San Diego*,
5 F.3d 1273 (9th Cir. 1993) ........................................................................11

*Cisco Sys., Inc. v. STMicroelectronics, Inc.*,
  No. C-14-03236-RMN, 2015 WL 3488923 (N.D. Cal. June 2, 2015) ..........................18

*Clear-View Techs., Inc. v. Rasnick*,
  No. 13-CV-02744-BLF, 2015 WL 3453529 (N.D. Cal. May 29, 2015) ......................17

*Connor v. Great W. Sav. & Loan Ass'n*,
  69 Cal. 2d 850, 447 P.2d 609 (1968) ........................................................................19

*In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
  Nos. C-05-04726 RMW, 2007 WL 486367 (N.D. Cal. Feb. 12, 2007)......................20

*Consol. Elec. Co. v. U.S. Gough Indus., Inc.*,
  355 F.2d 437 (9th Cir. 1966) ....................................................................................18

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
  557 F.2d 1280 (9th Cir. 1977) ...................................................................................8

*Delman v. J. Crew Grp., Inc.*,
  No. CV 16-9219-MWF, 2017 WL 3048657 (C.D. Cal. May 15, 2017)........................5

*In re Dental Supplies Antitrust Litig.*,
  No. 16 Civ. 696 (BMC) (GRB), 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ...........7

*Dillon v. Murphy & Hourihane, LLP*,
  No. 14-cv-01908-BLF, 2014 WL 5409040 (N.D. Cal. Oct. 22, 2014)........................8

*E-Fab, Inc. v. Accountants, Inc. Servs.*,
  153 Cal. App. 4th 1308 (2007) .................................................................................9

*Eisenbaum v. W. Energy Res., Inc.*,
  218 Cal. App. 3d 314 (1990) ....................................................................................10

*Engalla v. Permanente Medical Group, Inc.*
  15 Cal. 4th 951 (1997) .............................................................................................24

*Ewing v. McCarthy*,
  No. 3:17-CV-01554-GPC-RBB, 2017 WL 4810098 (S.D. Cal. Oct. 25, 2017)............5

*Fischer v. Ocwen Loan Servicing, LLC*,
  No. CV-14-94-BLG-SPW-CSO, 2014 WL 6685987 (D. Mont. Nov. 25, 2014),
  *report and recommendation adopted,* No. CV 14-94-BLG-SPW-CSO, 2014 WL
  11498231 (D. Mont. Dec. 11, 2014) ..........................................................................21

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005) .............................................................................................9

*Gerritsen v. Warner Bros. Entm't Inc.*,
  112 F. Supp. 3d 1011 (C.D. Cal. 2015*)* ....................................................................3

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) ...................................................................................18, 22, 24

*Gold v. Lumber Liquidators, Inc.*,
   No. 14-cv-05373-TEH, 2015 WL 7888906 (N.D. Cal. Nov. 30, 2015) ...........................................3

*Graham-Sult v. Clainos*,
   756 F.3d 724 (9th Cir. 2014) ...................................................................................10

*Hamilton Materials Inc. v. Dow Chem. Corp.*,
   494 F.3d 1203 (9th Cir. 2007) ...................................................................................9

*Harmoni Int'l Spice, Inc. v. Wenxuan Bai*,
   No. CV-16-00614-BRO(ASX), 2016 WL 9275400 (C.D. Cal. Nov. 14, 2016) .......................6, 7

*In re Cent. Valley Processing, Inc.*,
   Bankr. No. 03-11610-B-7, 2007 WL 840500 (Bankr. E.D. Cal. Mar. 16, 2007)..........................21

*Jablon v. Dean Witter & Co.*,
   614 F.2d 677 (9th Cir. 1980) ...................................................................................11

*In re Jamster Mktg. Litig.*,
   2009 WL 1456632 (S.D. Cal. May 22, 2009)...................................................................12

*Kidron v. Movie Acquisition Corp.*,
   40 Cal. App. 4th 1571 (1995) ...................................................................................18

*King v. Vesco*,
   342 F. Supp. 120 (N.D. Cal. 1972*)* ...................................................................................8

*Luna v. Shac, LLC*,
   No. C14-00607 HRL, 2014 WL 3421514 (N.D. Cal. July 14, 2014)...........................................5

*McGee v. Int'l Life Ins. Co.*,
   355 U.S. 220 (1957)...................................................................................5

*Estate of Migliaccio v. Midland Nat'l. Life Ins. Co.*,
   436 F. Supp. 2d 1095 (C.D. Cal. 2006) ...................................................................................20

*Mohebbi v. Khazen*,
   50 F. Supp. 3d 1234 (N.D. Cal. 2014) ...................................................................................12

*Montel Aetnastak, Inc. v. Miessen*,
   998 F. Supp. 2d 694 (N.D. Ill. 2014) ...................................................................................5

*Monterey Bay Military Hous., LLC v. Pinnacle Monterey LLC*,
   116 F. Supp. 3d 1010 (N.D. Cal. 2015) ...................................................................................13

*In re N. Sea Brent Crude Oil Futures Litig.*,
   No. 13-md-02475 (ALC), 2017 WL 2535731 (S.D.N.Y. June 8, 2017) ....................................7

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*,
    635 F. Supp. 2d 1170 (S.D. Cal. 2009)..................................................7, 11

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    926 F. Supp.2d 1143 (C.D. Cal. 2013) ............................................................7

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) .............................................................................23

*Nymark v. Heart Fed. Sav. & Loan Ass'n.*,
    231 Cal. App. 3d 1089 (1991) ........................................................................19

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) ................................................................. *passim*

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n*,
    298 F.3d 768 (9th Cir. 2002) ....................................................................12, 17

*PT United Can Co. v. Crown Cork & Seal Co.*,
    138 F.3d 65 (2d Cir. 1998)................................................................................8

*Quantum Catalitics, LLC v. Vantage Point Venture Partners*,
    No. CIV.A. H-07-2619, 2008 WL 5245298 (S.D. Tex. Dec. 15, 2008)............5

*Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*,
    119 F.3d 935 (11th Cir. 1997) ..........................................................................9

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993).......................................................................................12

*Richelle L. v. Roman Catholic Archbishop of S.F.*,
    106 Cal. App. 4th 257, 130 Cal. Rptr. 2d 601 (2003).....................................19

*Rupert v. Bond*,
    68 F. Supp. 3d 1142 (N.D. Cal. 2014) ............................................................14

*Salinas v. United States*,
    522 U.S. 52 (1997)..........................................................................................16

*Santomenno v. Transamerica Life Ins. Co.*,
    310 F.R.D. 451 (C.D. Cal. 2015)....................................................................19

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ............................................................................8

*Silva v. Aviva PLC*,
    No. 15-CV-02665-PSG, 2016 WL 1169441 (N.D. Cal. Mar. 25, 2016)............8

*Sipe v. Countrywide Bank*,
    690 F. Supp. 2d 1141 (E.D. Cal. 2010)...........................................................19

*Smith v. Home Loan Funding, Inc.*,
   192 Cal. App. 4th 1331, 121 Cal. Rptr. 3d 857 (2011)...............................................19

*In re Sumitomo Copper Litig.*,
   120 F.Supp.2d 328 (S.D.N.Y. 2000)..............................................................................6

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ...............................................................................13, 15

*Swingless Golf Club Corp. v. Taylor*,
   679 F. Supp. 2d 1060 (N.D. Cal. 2009) ........................................................................24

*Tatung Co., v. Shu Tze Hsu*,
   217 F. Supp. 3d 1138 (C.D. Cal. 2016) ........................................................................18

*Terraza v. Safeway Inc.*,
   241 F. Supp.3d 1057 (N.D. Cal. 2017) .....................................................................1, 21

*Three Rivers Provider Network, Inc. v. Meritain Health, Inc.*,
   No. 07cv1900WQH(BLM), 2008 WL 2872664 (S.D. Cal. July 23, 2008)...................12

*Tymoshenko v. Firtash*,
   No. 11-CV-2794 (KMW), 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) ....................7

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ........................................................................21

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*,
   1 Cal. 3d 586, 463 P.2d 770 (1970) ..............................................................................10

*United States v. Lothian*,
   976 F.2d 1257 (9th Cir. 1992) ......................................................................................16

*United States v. Persico*,
   832 F.2d 705 (2d Cir. 1987)...................................................................................15, 16

*United States v. Stapleton*,
   293 F.3d 1111 (9th Cir. 2002) ......................................................................................16

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
   MDL No. 2672 CRB (JSC) 2017 WL 4890594, at *11 (N.D. Cal. Oct. 30, 2017)...........14, 15, 16

*Walden v. Fiore*,
   134 S.Ct. 1115 (2014)......................................................................................................6

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   865 F. Supp. 2d 1002 (C.D. Cal. 2011) .................................................................15, 16

*Wolf v. Superior Court of L.A. Cty.*,
   106 Cal. App. 4th 625, 130 Cal. Rptr. 2d 860 (2003)..................................................19

*Wyatt v. Union Mortg. Co.*,
   24 Cal. 3d 773 (1979) (En Banc) ................................................................................10

**Statutes**

18 U.S.C. § 1962(c) ................................................................................................12, 17

18 U.S.C. § 1962(d) ...............................................................................................16, 17

18 U.S.C. § 1965 ..........................................................................................................1

18 U.S.C. § 1965(a) ..............................................................................................4, 8, 9

18 U.S. C. § 1965(b) ................................................................................................4, 6

**Other Authorities**

§ 11 Cal. Real Est. § 35:13 (4th ed.) ..........................................................................19

Wright & Miller, FED. PRAC. & PROC. § 1351 (3d ed.) ................................................8

**INTRODUCTION**

Jefferies Mortgage Finance, Inc., Jefferies & Company, Inc., Jefferies LLC, and Jefferies Group LLC ("Jefferies") paint themselves as having "limited involvement in the alleged facts." (Dkt. #63 at 1.) That false premise undermines nearly all of Jefferies' arguments. Jefferies, with full knowledge and after ample due diligence, bought into an ongoing conspiracy when it hired Defendant Danny Ray and his team and purchased the MHPI assets of Capmark. (Dkt. #60, First Am. Compl. ("FAC") ¶¶ 23, 82-83.) Shortly thereafter, Jefferies then perpetrated the very same RICO scheme at the Fort Sill Project and the Fort Bliss Project, reaping millions in secret profits from these Plaintiffs, based on outright misrepresentations and omissions. (*Id.* at ¶¶ 116-117, 118-121.) In 2016-17, demonstrating Jefferies' full commitment to the conspiracy, Ray, while still a Managing Director of Jefferies, actively attempted to destroy thousands of MHPI Project documents in response to a California state subpoena, then lied about it in sworn testimony. (*Id.* at ¶¶ 143-145.)

Jefferies' remaining arguments do not withstand scrutiny. Plaintiffs have alleged in detail the fiduciary relationship of Jefferies, and those allegations withstand Jefferies' second-guessing on a motion to dismiss. *Terraza v. Safeway Inc.*, 241 F. Supp.3d 1057, 1083 (N.D. Cal. 2017) (existence of fiduciary duties is "a factual dispute that cannot be resolved on a motion to dismiss"). Personal jurisdiction over Jefferies is certain, as Jefferies knowingly joined and bought into a RICO conspiracy with significant connections to California and given the broad reach of § 1965 of RICO.

**BACKGROUND FACTS**

The Jefferies Defendants and their senior Managing Director Ray engaged in multiple fraudulent and tortious acts resulting in substantial and ongoing damages to the MHPI Plaintiffs. In late 2009, after GMAC became Capmark, Defendant Jefferies purchased the MHPI business. (FAC ¶ 23.) Prior to that transaction, Jefferies conducted substantial due diligence into the source and amount of the businesses profits. (*Id.*) Once at Jefferies, and with the consent of his superiors, Ray began using Jefferies to continue the longstanding frauds perpetrated against the Projects. (*Id.*) The Jefferies Defendants and Ray also engaged in new, additional fraud with respect to two MHPI Projects: Fort Sill and Fort Bliss. (*Id.* at ¶¶ 23-25, 79, 83-85, 116-121, 143.)

The long-running scheme to defraud, which Jefferies willingly joined after due diligence, crystalized in Northern California and was then perpetuated on other Projects nationwide. The Monterey Project was where Defendants first began to secretly profit on the sale of bonds securitized by the Project's loan. (FAC ¶¶ 10-11.) Ray and GMAC held themselves out, including in writing, as financial advisor to the Monterey Project (*Id.* at ¶¶ 76-77), but failed to disclose that they were selling the bonds at a profit before the loan closing—which by definition resulted in the Monterey Project being saddled with an above market interest rate on its 38 year loan. But for the trust gained through financing the Monterey and other early Projects, and having perfected the scheme, Defendants would have been unable to continue their fraudulent scheme at the dozen Plaintiff Projects which followed. (*Id.* at ¶¶ 64-65, 77-80.) And as alleged, Jefferies willingly hired Ray and his team after due diligence and allowed him to continue these frauds, reaping immense profits itself in the process. (*Id.* at ¶¶ 82-83; *see also id.* at ¶ 131-134.)

Ray and Jefferies then built on the fraud perpetrated by Ray and his co-conspirators on the Monterey Project, in connection with the secret profits reaped by Jefferies on the Sill Project in 2010 and additional financing for the Bliss Project in 2012. In early 2010, the Jefferies Defendants continued to make misrepresentations to the Sill Project in connection with the interest rate on the loan, which resulted in Jefferies and Ray making millions in secret profits and further concealing its past frauds. (*See* FAC, ¶¶ 23-25, 79, 83-85, and 116-117.) In 2012, the Jefferies Defendants extracted additional fraudulent profits from the Bliss Project, using a right of first refusal fraudulently obtained by Ray to burden the Project with additional overpriced debt. (*Id.* at ¶¶ 118-121.) Ray and Jefferies actively colluded in an effort to continue to cover up the frauds, including through attempts to destroy evidence in response to a California state issued subpoena in connection with related litigation among the MHPI Projects and Ambac. (FAC ¶ 143-145.)

While Jefferies argues that Plaintiffs should have uncovered the scheme much earlier, Plaintiffs allege in detail that the fraudulent scheme was discovered only as a result of discovery in the related state court litigation in Monterey Superior Court. (FAC ¶¶ 137-145.) Jefferies and Ray engaged in efforts to destroy documents that have likely resulted in spoliation, as part of a concerted effort to conceal their fraud. (FAC ¶¶ 30, 143.) Indeed, within hours of receiving the Monterey Project's

1   subpoena, Ray (still then a Managing Director at Jefferies), began to delete over 9,000 documents

2   from Jefferies' server.  (*Id.* at ¶ 144.)  Jefferies attempted to conceal this wrongdoing throughout this

3   process, obstructing legitimate discovery itself (resulting in five orders compelling discovery after

4   Jefferies engaged in conduct that the California state court called "highly disturbing" (*see* FAC ¶ 30))

5   and even going so far as to ***dissolve*** Jefferies Mortgage within days of the California state court's order

6   granting the Monterey Project discovery into Jefferies Mortgage's access logs, which conclusively

7   proved Ray's attempts at spoliation.  (FAC ¶ 144.)

8   ## LEGAL STANDARD

9   On a motion to dismiss, the Court must "read the complaint in the light most favorable to the

10  non-moving party. Allegations in the complaint, together with reasonable inferences therefrom, are

11  assumed to be true for purposes of the motion.  A dismissal for failure to state a claim pursuant to

12  12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of

13  facts in support of his claim which would entitle him to relief."  *Odom v. Microsoft Corp.*, 486 F.3d

14  541, 545 (9th Cir. 2007).  Under Rule 9(b), "[t]he allegations must be specific enough to give the

15  defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that

16  they can defend against the charge and not just deny that they have done anything wrong."  *Gold v.*

17  *Lumber Liquidators, Inc.*, No. 14-cv-05373-TEH, 2015 WL 7888906, at *2 (N.D. Cal. Nov. 30, 2015).

18  "The only aspects of wire fraud that require particularized allegations are the factual circumstances of

19  the fraud itself."  *Odom*, 486 F.3d at 554.

20  Unique to Jefferies, it has chosen to submit voluminous evidence that falls well-outside the

21  pleadings including a declaration of counsel which allegedly "summarizes" certain facts.  (*See* Dkt.

22  #63-1 (attaching chart "summarizing" information related to Project closing and attaching a document

23  that counsel asserts, in his opinion and contrary to Plaintiffs' allegations, is the "single email

24  communication responsive" to one of Plaintiffs' allegations).)  Such facts submitted in response to a

25  motion to dismiss should not be considered by the Court. *E.g., Gerritsen v. Warner Bros. Entm't Inc.*,

26  112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015).

27

28

1

### ARGUMENT

2

### I.   PLAINTIFFS HAVE ADEQUATELY ALLEGED PERSONAL JURISDICTION.

3

Plaintiffs have multiple independent bases for personal jurisdiction over the Jefferies

4

Defendants.  First, Plaintiffs have adequately alleged specific personal jurisdiction under California's

5

long-arm statute.   Second, Plaintiffs' RICO allegations provide personal jurisdiction pursuant to

6

Section 1965(b), as well as Section 1965(a), because there is no other district court which has personal

7

jurisdiction over all of the Defendants.

8

####    A.   Jefferies Is Subject To Personal Jurisdiction Under California's Long Arm Statute.

9

Jefferies argues Plaintiffs have not alleged "any conduct in California related to the claims of

10

the California-based Vandenberg, AMC West, or Monterey Projects."  (Dkt. #63 at 7.)  This is

11

inaccurate.  Plaintiffs allege that Jefferies knowingly bought its way into an ongoing fraud that was

12

largely orchestrated and perfected on the Monterey Project, in California, thus joining an ongoing

13

conspiracy which had injured and ***was continuing to cause injury*** in California.  (FAC ¶¶ 82-85.)  In

14

addition, Jefferies acted as the servicer for the Monterey Project, collecting (and profiting from) fees

15

for servicing loans with fraudulently inflated interest rates. (*Id.* at ¶ 82.)  Finally, in order to keep their

16

fraudulent conduct concealed, Ray and Jefferies not only lied to the MHPI Projects during their

17

business dealings, but further Ray and Jefferies engaged in improper discovery conduct in California

18

litigation in an attempt to cover up the frauds.  (*See* FAC ¶¶ 143–44.)

19

The Court looks to California's long-arm statute.  *Am. Tel. & Tel. Co. v. Compagnie Bruxelles*

20

*Lambert*, 94 F.3d 586, 589 (9th Cir. 1996), *supplemented,* 95 F.3d 1156 (9th Cir. 1996).  Specific

21

personal jurisdiction requires that "1) the nonresident defendant must have purposefully availed

22

himself of the privilege of conducting activities in the forum by some affirmative act or conduct;

23

2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; and

24

3) exercise of jurisdiction must be reasonable." *Applied Underwriters, Inc. v. Combined Mgmt., Inc.*,

25

No. C07-5129 BZ, 2007 WL 4287322, at *1 (N.D. Cal. Dec. 5, 2007) (citation omitted).[1]  In

26

27
28

---

[1]  Although Plaintiffs have the burden to show the first two elements, when those elements are satisfied, the burden shifts to Defendants to demonstrate that the exercise of jurisdiction is not reasonable.  *Ewing v. McCarthy*, No. 3:17-CV-01554-GPC-RBB, 2017 WL 4810098, at *2 (S.D.

1   establishing whether the defendant purposefully directed actions at the forum, the court considers

2   whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3)

3   causing harm that the defendant knows is likely to be suffered in the forum state." *Luna v. Shac, LLC*,

4   No. C14-00607 HRL, 2014 WL 3421514, at *2 (N.D. Cal. July 14, 2014) (citation omitted); *Delman*

5   *v. J. Crew Grp., Inc.*, No. CV 16-9219-MWF (ASx), 2017 WL 3048657, at *3 (C.D. Cal. May 15,

6   2017) (recognizing that courts apply a "purposeful direction analysis for claims sounding in tort")

7   (citation and quotation omitted).

8        Each of the Jefferies entities is subject to personal jurisdiction under California's long-arm

9   statute.  In 2009, Jefferies knowingly signed on to and began to further the ongoing conspiracy and

10  scheme to defraud.  (FAC at ¶¶ 23, 82-83.)  Jefferies directed numerous tortious acts, in furtherance

11  of the conspiracy, in the state of California, including through their substantial deletion of documents.

12  (*Id.* at ¶¶ 143–44.)  Such overt acts by Jefferies in furtherance of the conspiracy establish personal

13  jurisdiction.  *Quantum Catalitics, LLC v. Vantage Point Venture Partners*, No. CIV.A. H-07-2619,

14  2008 WL 5245298, at *4 (S.D. Tex. Dec. 15, 2008) (holding that court has specific personal

15  jurisdiction, under similar Texas long-arm statute where "Plaintiffs allege that Defendant committed

16  an unlawful, overt act in the furtherance of a conspiracy" directed at Texas); *Montel Aetnastak, Inc. v.*

17  *Miessen*, 998 F. Supp. 2d 694, 713 (N.D. Ill. 2014) ("[T]he Court finds that Plaintiffs have sufficiently

18  demonstrated that Miessen's activities in furtherance of the conspiracy were purposefully directed at

19  Illinois, and therefore the Court may exercise specific jurisdiction over Miessen.").  Further, Jefferies

20  conducted business in California with the Monterey Project after its purchase of the MHPI loan

21  servicing business in 2009 (FAC ¶ 82), which allowed it to earn substantial loan servicing fees (all

22  based on the fraudulently inflated loans) from the Monterey Project in California.  It thus purposefully

23  availed itself of doing business in California.  *E.g.*, *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957).

24       **B.    Jefferies Cannot Escape The Reach Of RICO Section 1965(b).**

25       Even if this Court were to find that it does not have specific personal jurisdiction over the

26  Jefferies Defendants, the Court has personal jurisdiction over *all Defendants*, including Jefferies,

27

28  _____

    Cal. Oct. 25, 2017).  Jefferies has not argued that the exercise of jurisdiction would not be reasonable.

1   pursuant to 18 U.S.C. § 1965(b).  A court may exercise jurisdiction under § 1965(b) where the court

2   has personal jurisdiction over at least one defendant, and there is no other district court in the United

3   States that could exercise personal jurisdiction over all of the defendants who were part of a multi-

4   district RICO conspiracy.  *Butcher's Union Local No. 498, United Food & Commercial Workers v.*

5   *SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986). Jefferies makes the remarkable argument that

6   1965(b) does not confer jurisdiction because this Court does not have personal jurisdiction over ***any***

7   Defendant.  (Dkt. #63 at 8.)  Jefferies' Co-Defendant Ambac, however, has **conceded** that the Court

8   has personal jurisdiction over it.  (Dkt. #86 at 9:11-12, 11/30/17 Hr'g Tr. (Counsel for Ambac: "Well,

9   certainly for our client, we believe -- we concede there would be jurisdiction"); *see also* Dkt. #71 at

10  24-25.)  For these reasons, and as explained in Plaintiffs' oppositions to Jefferies' co-Defendants'

11  motions to dismiss, this prong of Section 1965(b) is conclusively met.

12       Plaintiffs allege that the Annandale Defendants and Defendant Ray are not subject to personal

13  jurisdiction in New York, as the Annandale Defendants are LLCs, organized under the laws of

14  Colorado and South Carolina which are controlled by Ray, who is a South Carolina resident.  (FAC ¶

15  66.)  These allegations are sufficient to allow the Court to exercise jurisdiction over all Defendants

16  pursuant to § 1965(b).  *Harmoni Int'l Spice, Inc. v. Wenxuan Bai*, No. CV-16-00614-BRO(ASX), 2016

17  WL 9275400, at *13 (C.D. Cal. Nov. 14, 2016); *Canada v. Meracord, LLC*, No. C12-5657 BHS, 2013

18  WL 392492, at *3–4 (W.D. Wash. Jan. 31, 2013).

19       Furthermore, Plaintiffs have not alleged Ray committed any tortious acts while in New York

20  (nor does his jurisdictional declaration suggest otherwise, *see* Dkt. #64-1, nor were the effects of any

21  torts felt in New York as no Plaintiff resides there.  (*See* FAC ¶¶ 33-50.)  Jefferies' citation to *In re*

22  *Sumitomo Copper Litig.*, 120 F.Supp.2d 328, 340 (S.D.N.Y. 2000) for a nearly limitless reach of the

23  "conspiracy theory of personal jurisdiction" is likewise misplaced.  The Supreme Court has made clear

24  that the "analysis looks to the defendant's contacts with the forum State itself, not the defendant's

25  contacts with persons who reside there."  *Walden v. Fiore,* 134 S.Ct. 1115, 1122 (2014).  Indeed,

26  numerous recent New York federal cases have categorically rejected the "certainly nebulous

27  'conspiracy jurisdiction' doctrine."  *In re Aluminum Warehousing Antitrust Litig.*, 90 F.Supp.3d 219,

28  227 (S.D.N.Y. 2015); *Tymoshenko v. Firtash*, No. 11-CV-2794 (KMW), 2013 WL 1234943, at *4

1  (S.D.N.Y. Mar. 27, 2013) ("the use of this conspiracy theory has been widely criticized by courts and

2  scholars") (collecting authorities); *In re Dental Supplies Antitrust Litig.*, No. 16 Civ. 696 (BMC)

3  (GRB), 2017 WL 4217115, at *7 (E.D.N.Y. Sept. 20, 2017) ("[T]here is no doctrinal support for

4  'conspiracy jurisdiction.'"); *In re N. Sea Brent Crude Oil Futures Litig.*, No. 13-md-02475 (ALC),

5  2017 WL 2535731, at *9 (S.D.N.Y. June 8, 2017).

6      Jefferies concedes the Southern District of New York lacks jurisdiction over the Annandale

7  Defendants, instead arguing, without support, that the Annandale Defendants were not members of

8  the RICO conspiracy.  (Dkt. #63 at 8-9.)  Plaintiffs, however, have alleged the involvement of the

9  Annandale Defendants in the nationwide RICO conspiracy.  (FAC ¶¶ 135-136.)  The law does not

10 allow a RICO defendant to slice up a RICO enterprise in which it participated in order to escape

11 liability.  *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 635 F. Supp. 2d 1170, 1174 (S.D. Cal.

12 2009) ("[A]ll members of the enterprise need not be directly working with all other members of that

13 enterprise."); *id.* ("The common purpose element, however, does not require the enterprise participants

14 to share all of their purposes in common."); *see also Negrete v. Allianz Life Ins. Co. of N. Am.,* 926 F.

15 Supp.2d 1143, 1156 (C.D. Cal. 2013).[2]

16     Plaintiffs have alleged a single, multi-district nationwide conspiracy involving the commission

17 of multiple frauds by multiple defendants against multiple related Plaintiffs through common means.

18 (*E.g.*, FAC ¶ 31.)  Even if Jefferies disagrees with the allegations asserted against the Annandale

19 Defendants, this cannot be the basis to dismiss, as Jefferies has offered no affidavit or evidence which

20 contradicts the jurisdictional facts alleged.  *Harmoni Int'l Spice*, 2016 WL 9275400, at *9.  Plaintiffs

21 "need only make *a prima facie showing* of jurisdictional facts." *Schwarzenegger v. Fred Martin*

22 *Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004) (emphasis added). "Conflicts between facts" alleged by

23 Plaintiffs and Defendants must be resolved *in the plaintiff's favor* for purposes of a motion to dismiss.

24

25

26 [2] Jefferies makes the unsupported assertion that the Annandale Defendants have been added as part
   of a "fraudulent joinder." (Dkt. # 66 at 9.) Jefferies, however, cites no supporting facts or law and
27 well-pled allegations are taken as true. *Harmoni Int'l Spice*, 2016 WL 9275400, at *9. As
   discussed in Plaintiffs' opposition to the Annandale Defendants' motion, those LLCs were created
28 by Ray to conceal and shelter his ill-gotten gains from the beginning of Defendants' fraudulent
   scheme, and later used in direct furtherance of fraud. (FAC ¶¶ 135-136.)

1    *Dillon v. Murphy & Hourihane, LLP*, No. 14-cv-01908-BLF, 2014 WL 5409040, at *3 (N.D. Cal.

2    Oct. 22, 2014) (emphasis added).

3         **C.    Section 1965(a) Establishes Personal Jurisdiction Over Jefferies.**

4         The Court possesses a third basis for personal jurisdiction over Jefferies pursuant to § 1965(a).

5    Jefferies argues that § 1965(a) is *only* a "special venue statute" and that "Plaintiffs are conflating

6    personal jurisdiction and venue."  (Dkt. #63 at 7.)[3]  This is wrong as a matter of law.  "1965(a) grants

7    ***personal jurisdiction*** over an initial defendant in a civil RICO case to the district court for the district

8    in which that person resides, has an agent, or transacts his or her affairs."  *Barantsevich v. VTB Bank*,

9    954 F. Supp. 2d 972, 989 (C.D. Cal. 2013) (citation omitted) (emphasis added); *PT United Can Co. v.*

10   *Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998) (same).  "The term 'transacts his affairs' in

11   18 U.S.C. § 1965(a) was intended to be synonymous with the term 'transacts business' in section 12

12   of the Clayton Act.  A corporation transacts business in a given judicial district within the meaning of

13   the Clayton Act only when it regularly carries on business of a substantial and continuous character

14   within that district."  *King v. Vesco*, 342 F. Supp. 120, 124 (N.D. Cal. 1972*); Bulk Oil (USA) Inc. v.*

15   *Sun Oil Trading Co.*, 584 F. Supp. 36, 39–40 (S.D.N.Y. 1983) (same).  Jefferies "regularly conducted

16   business and transacted its affairs in the state of California and had a registered agent in the state of

17   California during all relevant time periods." (FAC ¶ 63.)  Jefferies offers no evidence to contradict

18   Plaintiffs' jurisdictional allegations and the Court must accept them as true.  Wright & Miller, FED.

19   PRAC. & PROC. § 1351 (3d ed.) ("[F]ederal courts will, as they do on other motions under Rule 12(b),

20   take as true the allegations of the nonmoving party with regard to the jurisdictional issues and resolve

21   all factual disputes in his or her favor."); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280,

22   1284 (9th Cir. 1977).

23        Jefferies argues that Section 1965(a) cannot "extend the federal courts' personal jurisdiction

24   beyond its constitutional limit." (Dkt. #63 at 7.)  Jefferies, presumably referring to limitations imposed

25   by the Fourteenth Amendment's due process guarantee, is mistaken because the Fourteenth

26   _____

27   [3]  Jefferies cites to a footnote in *Silva v. Aviva PLC*, for the proposition that § 1965(a) is a "venue
     provision." No. 15-CV-02665-PSG, 2016 WL 1169441, at *3 (N.D. Cal. Mar. 25, 2016).  Nothing

28   in this case contradicts that § 1965(a) establishes both venue ***and personal jurisdiction***.

Amendment's due process clause limits the **States**' personal jurisdiction reach, not the jurisdiction of federal courts pursuant to federal statute. *Bristol-Myers Squibb Co. v. Superior Court of Cal., S. F. Cty.*, 137 S. Ct. 1773, 1783–84 (2017). Thus, "[i]t is well established that when, as here, a federal statute provides the basis for jurisdiction, the constitutional limits of due process derive from the Fifth, rather than the Fourteenth, Amendment." *Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997). Plaintiffs have pled, unchallenged, that Jefferies "transacted business" and had an agent in California during the relevant time period, including while it owned the loan servicing business relating to the Monterey Project, FAC ¶ 63, which establishes personal jurisdiction under §1965(a). *Barantsevich*, 954 F. Supp. 2d at 989 (plaintiff "satisfies the threshold requirement for exercising jurisdiction over an out-of-district RICO defendant" by alleging defendant "does business here").

## II. PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.

Jefferies also argues the Projects' claims are time-barred, but inexplicably ignores Plaintiffs' allegations that the statute of limitations was tolled by fraudulent concealment, *e.g.,* FAC ¶¶ 85, 116-117, 118-121, 137-148, and instead argues that it could not under any circumstances owe a fiduciary duty. (Dkt. #63 at 18-19.) California follows the discovery rule, which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1318 (2007) (citation omitted). Under the discovery rule, the limitations period begins when the plaintiff has inquiry notice of the cause of action. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). "A plaintiff is on inquiry notice of its fraud claims when he learns, or at least is put on notice, that a representation is false." *Hamilton Materials Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (citation and quotation marks omitted).

Jefferies argues that Plaintiffs have failed to plead fraudulent concealment with particularity (Dkt. #63 at 10), but fails to address Plaintiffs' detailed allegations on this point. Dispositively, Ray, including while he was Managing Director at Jefferies, held himself out as a financial advisor and was a fiduciary on whom the Projects relied. (FAC ¶¶ 6-8, 76-77, 82-84.) "[F]acts which ordinarily require investigation may not incite suspicion and do not give rise to a duty of inquiry. Where there is a

1    fiduciary relationship, the usual duty of diligence to discover facts does not exist."  *Eisenbaum v. W.*

2    *Energy Res., Inc.*, 218 Cal. App. 3d 314, 325 (1990) (citation omitted); *United States Liab. Ins. Co. v.*

3    *Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 596, 463 P.2d 770, 776 (1970) ("[W]here a fiduciary obligation

4    is involved the courts have recognized a postponement of the accrual until the beneficiary has

5    knowledge or notice of the act constituting a breach of fidelity.").

6         The Projects were entitled to believe their representations as true until they had notice of the

7    breaching act.  As alleged, the Projects did not have such notice until late 2016.  (FAC ¶ 137.)  In

8    addition, Plaintiffs' have alleged in detail that Defendants, including Jefferies, actively sought to

9    conceal their frauds from Plaintiffs throughout the time of their dealings and in connection with each

10   of the MHPI transactions.  For example, in 2006 "[o]ne of Ray's chief lieutenants, with Ray's

11   knowledge" misrepresented to the Projects the nature and purpose of an OID, claiming "'all GMAC

12   was doing' was swapping out interest and replacing it with principal" when in fact "GMAC was using

13   the OID to lock in secret profits prior to close of the loan transaction."  (*Id.* at ¶ 115.)  And once

14   Jefferies hired Ray and his team, they continued to take advantage of this trusted financial advisor

15   relationship to mislead the MHPI Projects even in the face of direct inquiries.  In 2010, the Sill Project

16   specifically asked "whether Jefferies was making a profit on the bonds at the expense of the Sill

17   Project" that it was selling to third parties.  (*Id.* at ¶ 116.)  Ray denied that Jefferies was making a

18   profit and continued to mislead.  (*Id.*)  Jefferies and Ray further concealed the truth regarding the effect

19   of the OID, which allowed Jefferies to earn more than $5 million in secret profit at the Sill Project's

20   expense.  (*Id.* at ¶117.)

21        Having developed a relationship of trust with Ray, their financial advisor, the Projects were

22   entitled to rely on their fiduciaries.  *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 782 (1979) (En Banc)

23   (holding that a party is entitled to rely on their fiduciary's representations and expect the "fullest

24   disclosure of all material facts . . . that might affect the principal[.]"); *Graham-Sult v. Clainos*, 756

25   F.3d 724, 743 (9th Cir. 2014) ("[E]ven though Plaintiffs had some duty to investigate the facts . . .that

26   duty was limited, because they were 'entitled to rely on the statements and advice provided by the

27   fiduciary.'"); *Alliance Mortgage v. Rothwell*, 10 Cal.4th at 1226, 1240 (1995).  Indeed, the scheme

28

1   could only be fully uncovered once Ambac and Jefferies were subject to court orders compelling them

2   to disclose information that was otherwise wholly unavailable to Plaintiffs.  (FAC ¶ 137.)

3   In any event, the law is clear that courts should rarely dismiss claims on statute of limitations

4   and inquiry notice grounds because it is a fact-intensive inquiry.  *Cervantes v. City of San Diego*, 5

5   F.3d 1273, 1277 (9th Cir. 1993) (stating equitable tolling requires a fact-intensive inquiry that

6   generally precludes dismissal on statute of limitations ground); *Jablon v. Dean Witter & Co.*, 614 F.2d

7   677, 682 (9th Cir. 1980) ("When a motion to dismiss is based on the running of the statute of

8   limitations, it can be granted only if the assertions of the complaint, read with the required liberality,

9   would not permit the plaintiff to prove that the statute was tolled.").

10  **III.    PLAINTIFFS ADEQUATELY ALLEGE A RICO ENTERPRISE AND PATTERN OF
         RACKETEERING ACTIVITY.**

11

12          **A.    Plaintiffs Adequately Allege An Association In Fact Enterprise And Jefferies'
                 Participation In Its Operation.**

13          Jefferies argues that because it was a late-joining member of the RICO enterprise, Plaintiffs

14  have failed to allege a "common purpose" of the RICO enterprise.  (Dkt. #63 at 12.)  Jefferies'

15  arguments are inconsistent with RICO's pleading requirements. "An association in fact enterprise is

16  simply a continuing unit that functions with a common purpose."  *Boyle v. United States*, 556 U.S.

17  938, 939 (2009).  Indeed, Ninth Circuit case law, cited by Jefferies, holds that RICO does not "require

18  that every member be involved in each of the underlying acts of racketeering, or that the predicate acts

19  be interrelated in any way," only that the co-conspirators' actions evince "ongoing rather than isolated

20  activity."  *Odom*, 486 at 552-553.  While an enterprise must have a "common purpose" (*e.g.*, common

21  victims or methods of fraud), "[t]he common purpose element, however, does not require the

22  enterprise participants to share all of their purposes in common." *In re Nat'l W. Life Ins. Deferred

23  Annuities Litig.*, 635 F. Supp. 2d at 1174; *id.* ("[A]ll members of the enterprise need not be directly

24  working with all other members of that enterprise.").

25          Jefferies argues, for similar reasons, that they cannot have been found to have "participated"

26  in the enterprise.  To the contrary, while liability under § 1962(c) requires Plaintiffs plead Jefferies'

27  role in the operation or management of a RICO enterprise, only "*some* part in directing the enterprise's

28  affairs is required."  *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (italics in original).  Indeed,

1   RICO's statutory text holds liable those who "conduct **or participate**" in a RICO enterprise, 18 U.S.C.

2   §1962(c) (emphasis added), and the Supreme Court held that "the word 'participate' makes clear that

3   RICO liability is not limited to those with primary responsibility for the enterprise's affairs."  *Reves*,

4   507 U.S. at 179.

5          Jefferies' attempt to analogize themselves to the defendants in this Court's decision in *Mohebbi*

6   *v. Khazen*, 50 F. Supp. 3d. 1234 (N.D. Cal. 2014) is misplaced.  As this Court recognized in *Mohebbi*,

7   in pleading an organization structure, "that structure need not exist beyond that necessary to carry out

8   its racketeering activities." *Id*. at 1254.  "A Plaintiff must plead only that there exists an ongoing

9   organization, either formal or informal, which acts through the coordinate nature of defendants'

10  activity and functions as a continuing unit."  *Id*. (internal quotation marks and citations omitted).  But

11  in that case, the plaintiff "merely allege[d] that the Defendants and their corporations form an

12  enterprise" and the plaintiff "does not cite **any** facts about the alleged enterprise whatsoever–only that

13  every Defendant sued in this matter is a part of the enterprise." *Id.* (emphasis added).  Similarly, the

14  pleadings in *In re Jamster Mktg. Litig.* are wholly distinguishable from Plaintiffs', as in that case the

15  plaintiff's allegations failed to "set forth sufficient allegations to distinguish ordinary business conduct

16  from fraudulent conduct.  No. 05CV0819 JM(CAB), 2009 WL 1456632, at *5 (S.D. Cal. May 22,

17  2009).  Here, Plaintiffs have alleged, in great detail, Jefferies' role in (1) knowingly acquiring Ray's

18  fraudulent enterprise and collecting fees for loan servicing (FAC ¶¶ 82-83); (2) profiteering from

19  specific transactions made possible only through purchase of this Enterprise and Ray's subsequent

20  misrepresentations to the Sill and Bliss Projects (*id*. at ¶¶ 83-84, 116-117, 118-121); and (3) concealing

21  Ray's and Jefferies' fraud through the many misrepresentations and attempts to cover up Ray's

22  deletion of thousands of MHPI documents (*id.* at ¶¶ 137-148).

23          According to the Jefferies Defendants, they cannot be liable because there was a portion of the

24  racketeering activity in which they were not involved.  (Dkt. #63 at 12-13.)  That is not the law.  *See*

25  *Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002) ("All

26  conspirators are liable for the acts of their co-conspirators."); *Three Rivers Provider Network, Inc. v.*

27  *Meritain Health, Inc.*, No. 07cv1900WQH(BLM), 2008 WL 2872664, at *5, *13 (S.D. Cal. July 23,

28  2008).  As discussed above, Jefferies is not permitted to dissect the alleged RICO enterprise to insulate

1   itself from liability.  *Odom*, 486 at 552-553 (holding RICO does not "require that every member be

2   involved in each of the underlying acts of racketeering, or that the predicate acts be interrelated in any

3   way," only that the co-conspirators actions show "ongoing rather than isolated activity").  Thus,

4   Jefferies' attempt to distort Plaintiffs' allegations to say Plaintiffs have not alleged any connection

5   between Jefferies and the Annandale Defendants (itself untrue, *see* FAC ¶ 136) or that Plaintiffs "fail

6   to state a claim because a RICO enterprise cannot consist solely of a company, its affiliates and

7   employees" fails.  (Dkt. #63 at 13.)  Jefferies is again wrong on the law when it comes to RICO

8   enterprises consisting of distinct corporate entities, as Plaintiffs have alleged here.  (FAC ¶ 31.)

9   "Defendants cannot shed their other corporate distinctions when it suits them, particularly where it is

10  alleged that the separate corporate entities were critical in carrying out the racketeering activity."

11  *Monterey Bay Military Hous., LLC v. Pinnacle Monterey LLC*, 116 F. Supp. 3d 1010, 1046 (N.D. Cal.

12  2015) (citing *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 165 (2001)).

13        **B.        Plaintiffs Adequately Alleged Racketeering Activity.**

14        Jefferies' argument that Plaintiffs' RICO allegations (i) are not sufficiently specific to the

15  Jefferies Defendants, (ii) improperly lump the various Jefferies Defendants together, and (iii) do not

16  allege two predicate acts committed by each Defendant fail as a matter of fact and law.

17        ***First***, Defendants are wrong that Plaintiffs have failed to make specific allegations against the

18  Jefferies Defendants.  (Dkt. #63 at 12.)  Defendants rely on *Swartz v. KPMG LLP*, 476 F.3d 756, 764

19  (9th Cir. 2007) for the unremarkable proposition that "Rule 9(b) does not allow a complaint to merely

20  lump multiple defendants together"—but Plaintiffs have not done so here.  Plaintiffs allege specific

21  conduct by both the Jefferies Defendants and their Managing Director Ray.  (*See, e.g.*  FAC ¶ 8

22  (identifying the timeframe in which Ray became a Jefferies employee).)  By way of example, Plaintiffs

23  allege that Jefferies brought Ray on as Managing Director and Head of Global Finance, authorized

24  with managing its MHPI-business, just as he had done previously at GMAC.  (*Id.* at ¶ 23.)  Plaintiffs

25  also specifically allege that the Jefferies Defendants as a whole conducted due diligence before

26  purchasing the Ray business, and after learning of the long running scheme to secretly profit to the

27  detriment of the MHPI Projects, the Jefferies Defendants knowingly bought into and continued the

28  conspiracy.  (FAC ¶ 82.)  Plaintiffs further allege that such fraud was within the scope of Ray's

1    employment, and that the Jefferies Defendants benefited from this fraud. (*Id.* at ¶¶ 131-34.) Moreover,

2    the specific role of Jefferies Mortgage Finance Inc. ("Jefferies Mortgage") as lender and signatory to

3    the Sill Project and Bliss Project disclaimers is clearly described and the complaint adequately pleads

4    its fraudulent acts and omissions within the RICO scheme. (*Id.* at ¶¶ 83-85 (describing concealment

5    of past frauds by Ray and Jefferies Mortgage as part of scheme to obtain fiduciary duty waiver).)

6        Jefferies' reliance on *Rupert v. Bond*, 68 F. Supp. 3d 1142 (N.D. Cal. 2014), is misplaced. In

7    *Rupert*, this Court criticized the Plaintiff's cursory allegation that "a series of emails were exchanged"

8    as lacking "any particularity [regarding] the content of the communications that comprised this alleged

9    scheme." 68 F. Supp. 3d at 1160. In contrast, Plaintiffs here have alleged in detail the form,

10    timeframes and content of communications that Ray, through and on behalf of Jefferies, sent to

11    Projects in the commission of fraud and to conceal the long running scheme—including specific

12    examples of such communications. (FAC ¶¶ 116-117.) For example, Plaintiffs allege that Ray was a

13    senior employee and Managing Director of the Jefferies entities and made misrepresentations about

14    his (and Jefferies') secret profits stemming from the Fort Sill transaction to Corvias in July/August

15    2010. (*Id.* at ¶ 116.) Ray specifically misrepresented that Jefferies would not realize a profit from the

16    OID during the Sill transaction, when, in fact, Jefferies realized more than $5 million in profit through

17    providing an above market interest rate on the loan, all the while representing the interest rate was

18    market. (*Id.* at ¶ 117.) And in 2012 with the Bliss Project's refinancing, "Ray and Jefferies [falsely]

19    assured the Bliss Project that the loan from Jefferies Mortgage was at market rate" when the bond

20    sales discovered by the Project in 2016 revealed the interest rate was above market. (*Id.* at ¶ 119.)

21        ***Second***, Plaintiffs have not improperly engaged in "group pleading" with respect to the specific

22    Jefferies entities. The law is well settled in this district that where defendant entities are organized

23    under the same corporate umbrella, and employees related to the malfeasance identify with the larger

24    umbrella grouping, the court will draw a "plausible inference that the knowledge of, and action

25    undertaken by, employees of [the sub-entities grouped together] can be attributed to [the sub-entities

26    individually]." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL

27

28

1   No. 2672 CRB (JSC) 2017 WL 4890594, at *11 (N.D. Cal. Oct. 30, 2017) ("*Volkswagen*").[4]  In

2   *Volkswagen*, various Defendant-entities acting under the Bosch corporate umbrella were found to all

3   work under some capacity through Bosch's Diesel Systems division, which included employees in the

4   various sub-entity defendants.  In recognizing that some employees did not merely identify themselves

5   within their separate sub-entities, the court found that treating these entities as a collective unit for

6   pleading purposes did not prejudice the defendants. *Id.*

7       Jefferies ignores that where appropriate, Plaintiffs have pled specific allegations against the

8   different Jefferies entities.  Plaintiffs have alleged that Ray worked for a succession of Jefferies

9   entities, and have identified those specific entities.  (FAC ¶¶ 8, 63, 82.)  Plaintiffs have identified these

10  specific entities to the best of their ability given their knowledge of Ray's employment history and

11  Jefferies' corporate structure.  Plaintiffs pled that "[i]n 2009 . . . Ray moved to and became employed

12  by Jefferies & Company, Inc., and in subsequent years when he became employed by Jefferies LLC

13  (all under the umbrella of parent company Jefferies Group LLC)[.]"  (*Id.* at ¶ 8.)  In relation to the Sill

14  and Bliss transactions, Jefferies Mortgage (also under the parent company Jefferies Group LLC's

15  umbrella) worked closely with Ray and the other Jefferies entities to fraudulently induce the Bliss and

16  Sill Projects to sign letters of intent claiming to disavow a fiduciary duty to plaintiffs.  (*Id.* at ¶ 83.)

17      ***Third***, the Jefferies Defendants are incorrect, as a matter of law, that Plaintiffs must allege two

18  predicate acts by each Defendant, for each individual Plaintiff.  (*see* Dkt. #63 at 14-15.)  To support

19  this argument, Jefferies cite *In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 865 F. Supp.

20  2d 1002, 1036 (C.D. Cal. 2011) which relied on the Second Circuit's decision in *United States v.*

21  *Persico*, 832 F.2d 705, 714 (2d Cir. 1987) to support its position.  But *Persico* is a case concerning the

22  criminal statute of limitations under RICO. 832 F.2d at 714.  It did not hold that a plaintiff must allege

23  two predicate acts of mail or wire fraud committed by each individual Defendant.

---

26  [4]  *Volkswagen* cites the Ninth Circuit case, *Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) in
    support of this position. In *Swartz*, unlike here, the Plaintiff alleged in conclusory fashion that two
27  Defendants ("Presido" and "DB") knew of false statements made by two other defendants, acted
    as agents of the other defendants, and were active participants in a fraudulent conspiracy.  *Id.* at
28  765.  The Court rejected this attempt to "merely lump multiple defendants together[.]"  *Id.* at 764.
    As detailed above, Plaintiffs adequately pleaded the fraudulent conduct as to Jefferies.

As the court in *In re WellPoint* went on to note, "the complaint need not identify false statements made by each and every individual," but rather Plaintiffs need only "identify the role of each defendant in the alleged fraudulent scheme." *Id.* at 1036.  This is consistent with the broad encapsulation of mail and wire fraud recognized by the Ninth Circuit.  The mail and wire fraud statutes' "scheme to defraud" elements are "treated like conspiracy in several respects." *United States v. Stapleton*, 293 F.3d 1111, 1117 (9th Cir. 2002) (quoting *United States v. Lothian*, 976 F.2d 1257, 1262 (9th Cir. 1992)).  Thus, a defendant may be liable for mail or wire fraud if (1) a defendant knowingly participates in a scheme to defraud; (2) a defendant has intent to defraud; and (3) a co-schemer or co-conspirator committed acts of mail or wire fraud during the defendant's participation in the scheme.  *Stapleton*, 293 F. 3d at 1119.

Indeed, Jefferies' exact argument was recently rejected in *Volkswagen* as contrary to the Ninth Circuit's opinion in *Stapleton*:

> In arguing against co-schemer liability for mail and wire fraud, Bosch also relies on *WellPoint*. In discussing RICO's "pattern" element, the district court there held that "[w]here RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by *each* defendant." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011). The *WellPoint* court went on to note, though, that "the complaint need not identify false statements made by each and every individual," but rather the plaintiff need only "identify the role of each defendant in the alleged fraudulent scheme." *Id.* at 1036 (citation omitted). **WellPoint, then, is not necessarily inconsistent with *Stapleton*. And to the extent *WellPoint* is inconsistent, the Ninth Circuit's *Stapleton* decision controls.**

*Volkswagen*, 2017 WL 4890594, at *13 (emphasis added).  This is because, to prove a violation of the mail or wire fraud statutes, "the misrepresentation does not need to be made through the mails or wires; rather, the use of the mails or wires only needs to be 'a step in the plot.'  The misrepresentation also does not need to be made to the RICO plaintiff, but instead may be made to a third-party." *Id.* at *11 (citations omitted). "Like co-conspirators, 'knowing participants in the scheme are legally liable' for their co-schemers' use of the mails or wires." *Stapleton*, 293 F.3d at 1117 (quoting *United States v. Lothian*, 976 F.2d 1257, 1262 (9th Cir. 1992)).

***Finally***, with respect to Jefferies' argument regarding two separate instances of mail and wire fraud are required to be pled as to it for purposes of liability under § 1962(d) (*see* Dkt. #63 at 16), the Supreme Court has explicitly rejected any such requirement.  *Salinas v. United States,* 522 U.S. 52,

66 (1997) ("It makes no difference that the substantive offense under § 1962(c) requires two or more predicate acts.  The interplay between subsections (c) and (d) does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense.").

## IV.   PLAINTIFFS ADEQUATELY ALLEGE CONSPIRACY CLAIMS AGAINST JEFFERIES.

Jefferies' argument that Plaintiffs have insufficiently pled an agreement or manifestation to participate in the RICO enterprise, citing *Baumer v. Pachl,* 8 F.3d 1341, 1346 (9th Cir. 1993), and thus that Plaintiffs have failed to adequately plead a claim under § 1962(d), also fails on the facts.  Plaintiffs allege that Jefferies was fully aware of the "essential nature and scope of the enterprise and intended to participate in it" after it conducted due diligence of GMAC/Capmark and Ray's MHPI business and knowingly brought Ray on board and began to engage in the pattern of racketeering activity.  (FAC ¶¶ 82-83.)   Jefferies argues that this course of conduct does not adequately plead an agreement, implying that Plaintiffs must, at the initial pleading stage, present evidence of some explicit agreement. (*See* Dkt. #63 at 16-17.)  But that is not the law.  Plaintiffs' allegations present sufficient circumstantial evidence to establish Jefferies' knowing agreement to join the ongoing RICO conspiracy.  *Oki Semiconductor Co.*, 298 F.3d at 775  ("The illegal agreement need not be express as long as its existence can be inferred from the words, actions, or interdependence of activities and persons involved.").  Jefferies almost immediately furthered the conspiracy on the Sill transaction, and did so on the 2012 Bliss transaction, all the while making misrepresentations about its secret profits.  (FAC ¶¶ 116-117, 118-121.)  These words and actions confirm an agreement to knowingly participate in the enterprise.  Jefferies further confirmed its commitment to the enterprise when it presided over and covered up a massive effort to destroy MHPI-related documents in response to a California state court subpoena. (*Id.* at ¶¶ 144-145.)  *See e.g., Clear-View Techs., Inc. v. Rasnick*, No. 13-CV-02744-BLF, 2015 WL 3453529, at *2 (N.D. Cal. May 29, 2015) ("The Court agrees with Plaintiff that evidence regarding Mr. Berg's purported spoliation is admissible under Rule 401 because it is relevant to the dispute at the heart of this case, which concerns allegations regarding whether Defendants induced Mr. Berg to cancel a planned investment in CVT. Evidence that Mr. Berg destroyed evidence regarding

his conduct is undoubtedly probative of Mr. Berg's consciousness of guilt regarding the alleged conspiracy.").

Jefferies' arguments regarding Plaintiffs' state law claim for conspiracy to commit fraud similarly fail.  Under California law, "[t]he elements of an action for civil conspiracy are (1) the formation and operation of the conspiracy and (2) damage resulting to plaintiff from (3) an act or acts done in furtherance of the common design." *Cisco Sys., Inc. v. STMicroelectronics, Inc.*, No. C-14-03236-RMN, 2015 WL 3488923, at *3 (N.D. Cal. June 2, 2015) (internal citations omitted).  "To be liable, an alleged conspirator must have knowledge of the planned tort and intent to aid in its commission." *Tatung Co., v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1183 (C.D. Cal. 2016) (citing *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995)).  Jefferies argument is that Plaintiffs have failed to adequately plead conspiracy because Plaintiffs' complaint does not specifically identify every individual at Jefferies (beyond Ray, a Managing Director of Jefferies) who was involved in the fraud. But that is not the law. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1556 (9th Cir. 1994) ("The pleading of detailed evidentiary matter is unwarranted by the strictures of Rule 9(b) and inconsistent with the basic principles of notice pleading."); *Odom*, 486 F.3d at 554 ("While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind—or scienter—of the defendants may be alleged generally.").  Regardless, dismissal of the claim at this stage is inappropriate, where Jefferies' knowledge and state of mind are at issue.  *See Tatung Co.,* 217 F. Supp. 3d 1138, 1183 (quoting *Consol. Elec. Co. v. U.S. Gough Indus., Inc.*, 355 F.2d 437, 438 (9th Cir. 1966) ("When an issue requires determination of state of mind, it is unusual that disposition may be made by summary judgment.").

## V.   PLAINTIFFS ADEQUATELY ALLEGE BREACH OF FIDUCIARY DUTY AGAINST JEFFERIES.

Jefferies incorrectly argues the Projects fail to allege facts sufficient to find a fiduciary obligation by Ambac.  (Dkt. #63 at 18.)  A fiduciary relationship "ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or

consent." *Wolf v. Superior Court of L.A. Cty.*, 106 Cal. App. 4th 625, 629 (2003) (citation and quotation marks omitted); *see also Richelle L. v. Roman Catholic Archbishop of S.F.*, 106 Cal. App. 4th 257, 271 (2003).

Jefferies contends a fiduciary relationship does not arise from a typical lender-lendee relationship. But as Plaintiffs allege in great detail, this was not a typical lender-lendee relationship, as Ray and later Jefferies assumed the role of financial advisor to the Plaintiff-Projects. (*See* FAC ¶¶ 83-85.) A fiduciary relationship may be found to the extent a lender, or any other party, undertakes additional services, including advisory functions. *See Connor v. Great W. Sav. & Loan Ass'n*, 69 Cal. 2d 850, 864, 447 P.2d 609, 616 (1968) (finding duty of care where "financing, which made the enterprise possible, took on ramifications beyond the domain of the usual money lender"); *Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1153 (E.D. Cal. 2010) (holding special circumstances giving rise to a fiduciary duty by a lender exist when it "actively participates in the financed enterprise beyond the domain of the usual money lender") (citation omitted); *Smith v. Home Loan Funding, Inc.*, 192 Cal. App. 4th 1331, 1336, 121 Cal. Rptr. 3d 857, 861 (2011); *Nymark v. Heart Fed. Sav. & Loan Ass'n.*, 231 Cal. App. 3d 1089, 1096 (1991).

Moreover, a fiduciary relationship may arise through a course of dealing. See § 11 Cal. Real Est. § 35:13 (4th ed.) ("Even where no pre-existing agency or fiduciary obligations exist, the ongoing course of dealing between the parties may sometimes give rise to a quasi-fiduciary relationship between an institutional lender and its customers."); *Santomenno v. Transamerica Life Ins. Co.*, 310 F.R.D. 451, 460 (C.D. Cal. 2015). Here, the Projects have alleged just such a relationship of confidence with Jefferies. The Projects first spent years developing relationships with GMAC and then Capmark—directly through and based on the representations and assurances of Dan Ray. (FAC ¶¶ 76-80.) The relationship went far beyond that of a standard lender-lendee or servicer-lendee relationship. Ray represented in writing to the Monterey and other Projects that he would serve in the role of "financial advisor" and that he would "use their best efforts to negotiate the most favorable rates." (*Id.* at ¶ 79.) He also represented to the Stewart/Hunter Project that he would advise the Project in "developing the financing structure, coordinating with rating agencies, negotiating the surety bond requirements[], analyzing capital structures and GIC bidding." (FAC ¶ 79.) Similar representations

1    were made to the other Plaintiff-Projects during the course of their financings.  (*Id.* at ¶¶ 79-80.)

2    Jefferies, which took over the Projects' deals from Capmark in 2009, was the beneficiary of Ray's

3    decade long fiduciary relationship.  (*Id.* at ¶ 77.)

4         Jefferies claims the Projects fail to plead that Jefferies took any "direct action" to indicate to

5    the Projects it was acting as their financial advisor.  (Dkt. #63 at 18-19.)  That is not the case, as the

6    Projects specifically allege that Jefferies held themselves out and ***acted*** as a financial advisor "acting

7    in the Projects' best interests" and that this was a continuation of the role Ray had played (and

8    represented in writing) while at GMAC.  (FAC ¶¶ 82-85.)  That is all that is required.  Jefferies' citation

9    to *In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, Nos. C-05-04726 RMW, 2007 WL

10   486367, at *7 (N.D. Cal. Feb. 12, 2007), is inapposite.  In that case, the court found no fiduciary duty

11   had been established because the complaint failed to allege that "Conseco itself did anything or held

12   itself out in a manner that would lead to imposition of a fiduciary relationship upon it[.]"  *Id.*  Instead,

13   Plaintiffs' allegations are akin to those in *Estate of Migliaccio v. Midland Nat'l. Life Ins. Co.*, where

14   the court denied a motion to dismiss because plaintiffs pled that defendants "trained their sales agents

15   to lure seniors citizens into their confidence by offering assistance with estate and financial planning,

16   ultimately to sell them improper annuities using standardized marketing materials and annuity

17   contracts that defendants supplied." No. CV-06-1007CAS (MANX) 436 F. Supp. 2d 1095, 1108 (C.D.

18   Cal. 2006).  Like in *Migliaccio*, Jefferies is alleged to have ***actually*** provided financial advice while

19   knowingly allowing its Managing Director Ray to make material misstatements to the Projects.  (FAC

20   ¶¶ 82-84, 116-117, 118-121.)

21        Jefferies also points to the disclaimer regarding fiduciary duties in the Sill and 2012 Bliss

22   letters of intent as dispositive that no fiduciary duty ever existed.  (Dkt. #63 at 19.)  As alleged in the

23   complaint, the disclaimers were induced by Jefferies' fraudulent omissions, by Ray, who was a long-

24   time financial advisor and fiduciary to the Projects.  (FAC ¶ 84.)  A duty to disclose information may

25   arise from a fiduciary or confidential relationship, but may also arise "when the defendant had

26   exclusive knowledge of material facts not known to the plaintiff; [] when the defendant actively

27   conceals a material fact from the plaintiff; and [] when the defendant makes partial representations but

28   also suppresses some material facts."  *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp.

3d 1092, 1110 (C.D. Cal. 2015) (citation omitted).  Here, Jefferies had knowledge of the scheme through its agent Ray and through other Jefferies executives.  Jefferies actively used the fact of its prior work with the Projects—including Ray's extensive experience with them—as a selling point for additional deals.

Plaintiffs have more than satisfied Rule 9(b) in alleging that Jefferies and Ray, in connection to the 2010 Sill and 2012 Bliss transactions, fraudulently induced those Projects to sign letters of intent claiming to disavow a fiduciary duty owed to the Projects.  (FAC ¶ 83.)  In the years preceding the disclaimers, Ray and his affiliated GMAC and Capmark employers held themselves out to Plaintiffs as their trusted financial advisors, and the Plaintiffs came to rely upon and trust Ray and his affiliated financial groups.  (*Id.* at ¶¶ 76-79.)  When Ray transferred to Jefferies, the financial advisor and thus fiduciary relationship continued.  (*Id.* at ¶ 84.)  Had Plaintiffs known of the fraud, they never would have agreed to any such disclaimers of fiduciary duty in the letters of intent.  (*Id.*)

Given these allegations regarding the existence of a fiduciary duty, the Court may not dismiss Plaintiffs' claims.  Whether a fiduciary duty arises from a course of dealing, rather than from a contract, is a fact-intensive inquiry that cannot be resolved on a motion to dismiss. "[T]o determine whether this special relationship exists, a court may be required to make a fact-intensive inquiry. The Court cannot make such an inquiry in connection with a motion to dismiss." *Fischer v. Ocwen Loan Servicing, LLC*, No. CV-14-94-BLG-SPW-CSO, 2014 WL 6685987, at *9 (D. Mont. Nov. 25, 2014), *report and recommendation adopted,* No. CV 14-94-BLG-SPW-CSO, 2014 WL 11498231 (D. Mont. Dec. 11, 2014); *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1083 (N.D. Cal. 2017); *In re Cent. Valley Processing, Inc.*, Bankr. No. 03-11610-B-7, 2007 WL 840500, at *2 (Bankr. E.D. Cal. Mar. 16, 2007).

## VI.  PLAINTIFFS ADEQUATELY ALLEGE AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY AGAINST JEFFERIES.

Jefferies argues the aiding-and-abetting claim fails because there is no allegation Jefferies had actual knowledge that any other Defendants owed a fiduciary duty to the Projects.  (Dkt. #63 at 20.)  But Plaintiffs unambiguously allege that "***[w]ith knowledge of the scheme*** that had been perpetrated [previously by Ray], Jefferies elected to go forward [] so Jefferies could benefit from this past

1   misconduct through servicing fees that these Projects are required to pay." (FAC ¶ 82 (emphasis

2   added).) The complaint also alleges Jefferies determined "Ray could continue his manipulation of

3   MHPI Project financings while at Jefferies." (*Id.* at ¶ 83.) The "scheme" was premised on the

4   deliberate cultivation of fiduciary relationships and breach of their attendant duties and is set forth in

5   excruciating detail in the complaint. Thus, Jefferies' suggestion that "mere knowledge" of and failure

6   to prevent a tort does not constitute aiding-and-abetting (Dkt. #63 at 20), simply ignores the substance

7   and context of Plaintiffs' allegations.

8         If the unambiguous allegations were not enough, the Projects can also establish actual

9   knowledge "through inference or circumstantial evidence." *AngioScore, Inc. v. TriReme Med., LLC*,

10  70 F. Supp. 3d 951, 957 (N.D. Cal. 2014). Ray helped develop the underlying scheme and understood

11  it required cultivating and exploiting relationships of trust and confidence. (FAC ¶¶ 77, 83-84.)

12  Jefferies knew this before it hired him to continue working with the same Projects and to secure new

13  deals with other Projects. (*Id.*; *see also id.* at ¶¶ 116-121 (describing Jefferies role in fraudulent

14  transactions at the Sill and Bliss Projects).) It is thus certainly plausible, if not highly likely, that

15  Jefferies had knowledge that a Jefferies executive was breaching fiduciary duties while acting on

16  Jefferies' behalf and Plaintiffs' allegations regarding Jefferies' state of mind are sufficient. *See Odom*,

17  486 F.3d at 554 ("While the factual circumstances of the fraud itself must be alleged with particularity,

18  the state of mind—or scienter—of the defendants may be alleged generally."); *id.* at 554 ("Allegations

19  in the complaint, together with reasonable inferences therefrom, are assumed to be true for purposes

20  of the motion.").

21  **VII.   PLAINTIFFS ADEQUATELY ALLEGE INTENTIONAL MISREPRESENTATION
           BY JEFFERIES.**

22

23        Jefferies argues, in conclusory fashion, that Plaintiffs have failed to allege fraud with sufficient

24  particularity. (Dkt. #63 at 13.) Yet Jefferies fails to grapple with the extensive, detailed allegations

25  regarding the misrepresentations made by Jefferies and Ray with respect to the Sill Project in 2010

26  and the Bliss Project in 2012. "Rule 9(b) does not require . . . the pleading of detailed evidentiary

27  matter." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1556 (9th Cir. 1994) ("[T]he pleading of detailed

28  evidentiary matter is unwarranted by the strictures of Rule 9(b) and inconsistent with the basic

1   principles of notice pleading."). A complaint satisfies 9(b) if it provides sufficient notice to the

2   defendant of the particular acts that are alleged to be fraudulent so that the defendant can prepare an

3   adequate answer. *Id.* Rule 9(b)'s threshold requires Plaintiffs to plead information "specific enough

4   to give [Jefferies] notice of the particular misconduct which is alleged to constitute the fraud charged

5   so that [it] can defend against the charge and not just deny that [it has] done anything wrong."

6   *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). While Plaintiffs are not required to identify

7   each evidentiary detail related to the Jefferies Defendants' conduct (nor could they absent full

8   discovery), as detailed below, Plaintiffs' complaint goes into great detail alleging the "who, what,

9   where, when why" of the Jefferies' Defendants' fraud and participation in the RICO scheme.

10      Plaintiffs allege that Ray, acting as a Jefferies Managing Director, actively misled the Sill

11   Project in 2010. (FAC ¶¶ 79, 83-84.) The Sill Project specifically asked Ray (therefore Jefferies) how

12   bonds were being marketed and priced and "whether Jefferies was making a profit on the bonds at the

13   expense of the Sill Project." (*Id.* at ¶ 116.) Ray denied that Jefferies was making a profit and continued

14   to mislead that Jefferies was taking "significant market risk" but these representations were materially

15   false. (*Id.*) Jefferies and Ray further lied during this transaction regarding the effect OID, which in

16   actuality allowed Jefferies to charge an inflated interest rate and thus earn more than $5 million in

17   additional profit, at the expense of the Sill Project. (*Id.* at ¶ 117.) Then in 2012, inflating the loan

18   interest rate once again, Jefferies and Ray earned millions of dollars in secret profits in connection

19   with the Bliss Project's follow-on financing by misleading the Bliss Project. (*Id.* at ¶¶ 118-121.)

20   Plaintiffs allege that in 2005 Ray locked in a right of first refusal to provide debt at Fort Bliss in any

21   refinance transactions. (*Id.* at ¶¶ 27, 119.) In 2012, while working at Jefferies, Ray and Jefferies

22   together exercised this right, and are alleged to have, through an inflated interest rate on the loan,

23   "reaped greater secret profits than on any other of the referenced MHPI Project transactions." (*Id.* at

24   ¶ 118.) In 2012, Plaintiffs allege that "Ray and Jefferies assured the Bliss Project that the loan from

25   Jefferies Mortgage was at market rate," but this was a lie as Ray knew from the interest shown by

26   potential investors. (*Id.* at ¶ 27.) These allegations are sufficient to allege fraud with particularity, as

27   required by Rule 9(b). *See Swingless Golf Club Corp. v. Taylor*, 679 F. Supp. 2d 1060, 1066 (N.D.

28   Cal. 2009); *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1556.

1    Jefferies argues that the July and August 2010 misrepresentations at Sill cannot form the basis

2    of a fraud claim because the Sill transaction closed in June 2010.  Jefferies relies on *Engalla v.*

3    *Permanente Medical Group, Inc*. 15 Cal. 4th 951, (1997), for the proposition that the Sill Project's

4    harm cannot stem from Jefferies' and Ray's post-closing misrepresentations concerning the OID (or

5    that the Monterey Project's harm cannot stem from misrepresentations made in 2016 regarding

6    documents.  (Dkt. #63 at 22.)  But as *Engalla* makes clear (in the sentence omitted from Jefferies'

7    citation), it "is not ... necessary that [a plaintiff's] reliance upon the truth of the fraudulent

8    misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct. .

9    . . It is enough that the representation has played a substantial part, and so has been a substantial factor,

10    in influencing his decision." *Engalla*, 15 Cal. 4th at 976–77 (alterations in original).  Importantly, "a

11    presumption, or at least an inference, of reliance arises wherever there is a showing that a

12    misrepresentation was material."  *Id.* at 977.  Thus, the court in *Engalla* found misstatements regarding

13    the expediency of arbitration could reflect "intent to induce subscription ***or renewal of subscription***

14    in Kaiser's health plans."  *Id.* at 976 (emphasis added).  Here, Ray and Jefferies sought to lull the Sill

15    Project into accepting and continuing the OID scheme with misrepresentations that they were not

16    wrongfully profiting from the scheme.  (FAC ¶¶ 116-117.)  Further, Jefferies ignores that the Sill

17    Project did actually rely on Jefferies and Ray's misrepresentation that "Jefferies was taking significant

18    market risk" and by inflating the interest rate and monetizing that inflated rate later in the sale of

19    bonds.  (*Id.* at ¶ 116.)  Based on this material misrepresentation, the Projects justifiably assumed they

20    had paid a market rate for their loans, were not being misled by their financial advisor, and continued

21    to make fraudulently-inflated interest payments for years.  (*Id.*)

22    **VIII.   JEFFERIES' MOTION TO TRANSFER MUST BE DENIED.**

23    The Jefferies Defendants failed to timely join Ambac's motion to transfer venue, despite

24    having ample opportunity. (*See, e.g.*, Dkt. # 47.) Given Plaintiffs' understanding that this issue will be

25    decided by the Court in connection with Ambac's motion (*see* Dkt. #86 at 15:1-7), Plaintiffs stand on

26    their response and supplemental filings in connection with Ambac's motion.  (Dkt. ## 48, 54, and 92.)

27    At bottom, Jefferies and the other Defendants cannot overcome the great weight that should be

28    afforded Plaintiffs' choice of forum in which the Monterey Plaintiffs have and operate their principal

place of business.  (*Id.*; *see also* Dkt. #48-1 (10/5/17 Decl. of F. Coen); Dkt. #48-2 (10/5/17 Decl. of D. Welch); # 92-7 (12/11/17 Suppl. Decl. of F. Coen) (attached hereto as Exhibits 1-3 for the Court's convenience).)

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny the Jefferies Defendants' motion to dismiss, as Plaintiffs have adequately pled this Court's personal jurisdiction and numerous valid claims against the Jefferies Defendants.

DATED: December 15, 2017                KIRKLAND & ELLIS LLP


By: */s/ Donna M. Welch, P.C.*
Michael P. Esser (SBN 268634)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439 1500
Email:  michael.esser@kirkland.com


Jeffrey L. Willian, P.C (*pro hac vice*)
Donna M. Welch, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email:  jwillian@kirkland.com
Email:  dwelch@kirkland.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 15, 2017 a copy of the foregoing document is being electronically filed with the Clerk of the United States District Court of the Northern District of California by using the CM/ECF system, which will send notice of such filing to all counsel of record.


DATED:  December 15, 2017                    Respectfully submitted,

                                             KIRKLAND & ELLIS LLP


                                             By:   _/s/ Donna M. Welch, P.C._____
                                             Michael P. Esser (SBN 268634)
                                             KIRKLAND & ELLIS LLP
                                             555 California Street
                                             San Francisco, CA 94104
                                             Telephone: (415) 439-1400
                                             Facsimile: (415) 439-1500
                                             Email: michael.esser@kirkland.com

                                             Jeffrey L. Willian, P.C. (*pro hac vice*)
                                             Donna M. Welch, P.C. (*pro hac vice*)
                                             KIRKLAND & ELLIS LLP
                                             300 North LaSalle
                                             Chicago, IL 60654
                                             Telephone: (312) 862-2000
                                             Facsimile: (312) 862-2200
                                             Email: jwillian@kirkland.com
                                             Email: dwelch@kirkland.com

                                             Attorneys for Plaintiffs

CERTIFICATE OF SERVICE                                    Case No.  5:17-cv-04992-BLF